UNITED STATES *v.* N. Y. RAYON IMPORTING CO.,
INC. (#2) ET AL.

NO. 94.

Argued January 8, 1947.—Decided February 3, 1947.

*Samuel D. Slade* argued the cause for the United States. With him on the brief were *Acting Solicitor General Washington, Assistant Attorney General Sonnett, Stanley M. Silverberg* and *Paul A. Sweeney.*

*Joseph M. Proskauer* argued the cause for the N. Y. Rayon Importing Co. et al. With him on the brief were *Eugene Eisenmann* and *Albert L. Solodar.*

Opinion of the Court by MR. JUSTICE MURPHY, announced by MR. JUSTICE RUTLEDGE.

This case involves another impact of § 177 (a) of the Judicial Code[1] on the power of the Court of Claims to award interest in a judgment against the United States.

The N. Y. Rayon Importing Co., Inc., (Rayon #1) and the Nyrayco Importing & Converting Corporation (Nyrayco) were engaged in the importation of rayon yarn. Between 1925 and 1929 they paid customs duties on such importations which they claimed were erroneous. Prior to March 1, 1930, they filed protests with the Collector of Customs in accordance with applicable Tariff Act provisions, which resulted in the institution of actions in the United States Customs Court.

---

[1] 28 U. S. C. § 284 (a).

On March 1, 1930, the N. Y. Rayon Importing Co., Inc., (Rayon #2) was incorporated for the purpose of acquiring all the assets and assuming all the liabilities of Rayon #1, Nyrayco and two other corporations in the rayon business. As a part of this reorganization, Rayon #1 was dissolved as of March 1, 1930, the New York Secretary of State issuing a certificate of dissolution on that date.

Rayon #2 was voluntarily dissolved on January 9, 1931, in accordance with New York law. Nyrayco was dissolved on December 16, 1935, by proclamation for nonpayment of New York franchise taxes.

In 1937, long after these three corporations were dissolved, the Customs Court rendered decisions sustaining the protests which Rayon #1 and Nyrayco had filed in connection with the duties on rayon yarn imported between 1925 and 1929. A reliquidation of the customs entries was directed. On reliquidation, the Collector of Customs ascertained that a refund of $362,482.71 was payable to Rayon #1 and $30,809.75 to Nyrayco. Checks payable to those corporations were drawn, but since the corporations had been dissolved the Collector caused the checks to be transmitted to the General Accounting Office "for lawful disposition." Representatives of Rayon #2 thereafter requested the General Accounting Office to deliver these checks to them; this request was denied and the Comptroller General deposited the proceeds of the checks in the Treasury in a trust fund entitled "Outstanding Liabilities 1938," pursuant to law.[2]

Several unsuccessful attempts were made by the representatives of the three dissolved corporations to obtain the money in the trust fund. First, a consent decree was entered in a declaratory judgment proceeding in the Supreme Court of the State of New York adjudicating that,

[2] Section 21 of the Act of June 26, 1934, c. 756, 48 Stat. 1235, 31 U. S. C. § 725t.

as among the three dissolved corporations, Rayon #2 was the owner of these customs refunds or the proceeds thereof.[3] But the General Accounting Office refused to make payment when confronted with this decree. Thereafter, on February 26, 1943, attorneys for the three dissolved corporations suggested to the Comptroller General that the money be released to Rayon #1 and Nyrayco with the consent of Rayon #2, each corporation being represented by its director or directors as trustees in liquidation. The Comptroller General rejected this proposal and stated that payment would be permitted only upon final judgment by a court of competent jurisdiction concluding the issue of ownership. He suggested that a suit be brought for this purpose in the Court of Claims.

Rayon #2 and its liquidating directors and trustees then brought this suit in the Court of Claims, claiming that Rayon #2 continued to exist for the purpose of collecting and distributing its assets and that it was the owner of the funds in issue. Rayon #1 and Nyrayco also brought suits in the Court of Claims; they claimed the amounts of their respective refunds and alleged that ownership remained in them. After consideration of all three claims,[4] the court held that the rights of Rayon #1 and Nyrayco had been taken over by Rayon #2 and its liquidating directors and trustees, who were thus entitled to

---

[3] This non-adversary proceeding only affected rights as between Rayon #1 and Nyrayco, on the one hand, and Rayon #2 on the other. It provided the Government no protection as against the other possible claimants who were later impleaded and cited in the Court of Claims action. See footnote 4.

[4] The three suits were consolidated. In all three cases, the Societé Pour Nouveaux Placements de Capitaux was impleaded as plaintiff. It filed a disclaimer of interest and the Court of Claims dismissed "all claims of interest" which it had. Several other persons and companies were named by the United States as having possible claims, but none of them asserted any claims or filed any intervening petitions; the court dismissed "all claims of interest" as to them.

recover the amounts held in trust by the United States. 64 F. Supp. 684. As a part of its judgment, however, the Court of Claims awarded 6% interest on the total fund, such interest to run from April 19, 1941, the date of an amendment to the New York Tax Law which retroactively clarified the capacity to sue of involuntarily dissolved corporations.[5]

We issued a writ of certiorari in No. 94, on petition of the United States, to review the action of the Court of Claims in awarding such interest. At the same time, we issued a writ of certiorari in No. 96 on a cross-petition of Rayon #2 and its liquidating directors and trustees urging that interest should have been allowed from the time of the issuance of the refund checks in 1937 and 1938 rather than from April 19, 1941.

In our opinion, § 177 (a) of the Judicial Code prohibits the award of any interest under the circumstances of this case. Section 177 (a) provides that "No interest shall be allowed on any claim up to the time of the rendition of judgment by the Court of Claims, unless upon a contract expressly stipulating for the payment of interest, . . ." As we recently pointed out in *United States* v. *Thayer-West Point Hotel Co.*, 329 U. S. 585, this provision codifies the traditional rule regarding the immunity of the United States from liability for interest on unpaid accounts or claims. In other words, in the absence of constitutional requirements, interest can be recovered against the United

---

[5] April 19, 1941, was the date when the Governor of New York approved an amendment to § 203a of the New York Tax Law, removing all possible question whether corporations which had previously and involuntarily been dissolved under the New York Tax Law for non-payment of franchise taxes had the right to maintain suits. This had relevance, however, only to Nyrayco. Rayon #1 and Rayon #2 were voluntarily dissolved in accordance with § 105 of the New York Stock Corporation Law. Their right to maintain suit to collect their assets was never questioned.

States only if express consent to such a recovery has been given by Congress. And Congress has indicated in § 177 (a) that its consent can take only two forms: (1) a specific provision for the payment of interest in a statute; (2) an express stipulation for the payment of interest in a contract duly entered into by agents of the United States. Thus there can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed. *Tillson* v. *United States,* 100 U. S. 43; *United States* v. *Thayer-West Point Hotel Co., supra.*

Tested by those standards, the award of interest in this case cannot be sustained. There is obviously no contractual stipulation involved. And the appropriation statutes which cover the refunds here in issue contain no provision whatever for the recovery of interest. Act of May 14, 1937, 50 Stat. 137, 142; Act of June 25, 1938, 52 Stat. 1114, 1149. The traditional immunity of the United States, as codified in § 177 (a), accordingly applies.

The Court of Claims, without making a reference to § 177 (a), sought to justify its award of interest on what it thought "would be right or just." It felt that the officials of the General Accounting Office had delayed too long in determining the ownership of the refund claims and that, at the very least, they could have suggested at an earlier date that a suit in the Court of Claims was necessary. Inasmuch as it was known since the time of the Customs Court's decisions in 1937 that the money did not belong to the Government, the Court of Claims believed that it was only fair that the true owners get interest from the time when all defects and uncertainties were removed in

New York as to the capacity of dissolved corporations to maintain suits or to be sued.[6]

But assuming that the equities of the situation all favor the owners of the refund claims, the Court of Claims did not thereby acquire power to carve out an implied exception to the plain words of § 177 (a). Had Congress desired to permit the recovery of interest in situations where the Court of Claims felt it just or equitable, it could have so provided. The absence of such a provision is conclusive evidence that the court lacks any power of that nature. Indeed, any other conclusion would permit the Court of Claims to supply the consent which only Congress can give to the imposition of interest against the United States.

By the same token, if we assume that the officials of the General Accounting Office unreasonably delayed the determination of ownership of the funds, such action or inaction could not operate as a consent on the part of the United States. *Tillson* v. *United States, supra.* It has long been settled that officers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court in the absence of some express provision by Congress. *Carr* v. *United States,* 98 U. S. 433; *Stanley* v. *Schwalby,* 162 U. S. 255; *Minnesota* v. *United States,* 305 U. S. 382; *United States* v. *Shaw,* 309 U. S. 495. The same rule applies here. Only Congress can take the necessary steps to waive the immunity of the United States from liability

---

[6] Rayon #2 and its liquidating directors and trustees claim that the date of April 19, 1941, has no relevance whatever to the claim of Rayon #1. See footnote 5. And they claim that this date has no proper relation to the Nyrayco claim since the Government made no objection to Nyrayco's capacity to sue until several years after the decisions of the Customs Court and after checks in its name had been drawn by the Government.

for interest on unpaid claims.    Cf. *Smyth* v. *United States*, 302 U. S. 329, 353.

The owners of the refund claims, however, seek to avoid the effect of § 177 (a) by urging that it applies only to original claims which have not previously been reduced to judgment.    This proceeding, it is said, is based upon the pre-existing judgments of the Customs Court, thereby precluding the application of § 177 (a).    We do not pause here to inquire into the nature and effect of the decisions rendered by the Customs Court or the jurisdiction of the Court of Claims to entertain suits based upon pre-existing judgments.    It is enough to note that the traditional rule embodied in § 177 (a) is a complete one covering all types of claims, including those arising out of pre-existing judgments.    As we have seen, any exception to that rule must be grounded upon an express provision in a statute or contract.    It follows that any exception relating to pre-existing judgments must be traced to specific language in a contract or some other statute.    Section 177 (a) by itself warrants no such exception.    Cf. 31 U. S. C. § 226.

In this connection, the owners of the refund claims point to the Act of March 3, 1875, as amended in 1933.[7]    That

---

[7] Act of March 3, 1875, 18 Stat. 481, as amended by the Act of March 3, 1933, c. 212, Title II, § 13, 47 Stat. 1516, 31 U. S. C. § 227. This provides:

"When any final judgment recovered against the United States duly allowed by legal authority shall be presented to the Comptroller General of the United States for payment, and the plaintiff therein shall be indebted to the United States in any manner, whether as principal or surety, it shall be the duty of the Comptroller General of the United States to withhold payment of an amount of such judgment equal to the debt thus due to the United States; and if such plaintiff assents to such set-off, and discharges his judgment or an amount thereof equal to said debt, the Comptroller General of the United States shall execute a discharge of the debt due from the plaintiff to the United States. But if such plaintiff denies his indebtedness to the United

Act directs the Comptroller General to withhold payment from a judgment creditor of the United States, if such creditor is indebted in turn to the United States, until the indebtedness is satisfied. The Comptroller General is to cause suit to be brought on the Government's cross debt if the judgment creditor denies· the indebtedness. The Act then expressly permits 6% interest to be paid to the judgment creditor for the period of the withholding if the Government fails to win its suit and to substantiate its asserted set-off. Thus to that limited extent the Act of March 3, 1875, marks an exception to the traditional rule set forth in § 177 (a). See, for example, *American Potash Co.* v. *United States,* 80 Ct. Cl. 160, 8 F. Supp. 717; *Stewart & Co.* v. *United States,* 71 Ct. Cl. 126.

But the inapplicability of that Act to the facts of this case is at once apparent. The Act relates solely to the situation where the Government asserts a set-off against a judgment creditor. No such set-off is here asserted; there is nothing more than a withholding of payment by the Government until an ascertainment of ownership. In fact, there is no real claim that the situation in the instant case can be fitted within the terms of the Act of March 3, 1875. There is merely an argument that the policy of

States, or refuses to consent to the set-off, then the Comptroller General of the United States shall withhold payment of such further amount of such judgment, as in his opinion will be sufficient to cover all legal charges and costs in prosecuting the debt of the United States to final judgment. And if such debt is not already in suit, it shall be the duty of the Comptroller General of the United States to cause legal proceedings to be immediately commenced to enforce the same, and to cause the same to be prosecuted to final judgment with all reasonable dispatch. And if in such action judgment shall be rendered against the United States, or the amount recovered for debt and costs shall be less than the amount so withheld as before provided, the balance shall then be paid over to such plaintiff by such Comptroller General of the United States with 6 per centum interest thereon for the time it has been withheld from the plaintiff."

that Act in providing for the payment of interest where the withholding results from an erroneous belief in the existence of a cross-indebtedness applies with equal force where the withholding results from an attempt to determine ownership of a claim. But the immunity of the United States from liability for interest is not to be waived by policy arguments of this nature. Courts lack the power to award interest against the United States on the basis of what they think is or is not sound policy. We reiterate that only express language in a statute or contract can justify the imposition of such interest. Such language is absent in this instance.

We accordingly reverse the judgment of the Court of Claims in No. 94 to the extent that it includes an award of interest. And since it becomes unnecessary to consider the merits of the cross-claims, the writ of certiorari previously issued in No. 96 is dismissed.

*So ordered.*