FEENER TECHNICAL SCHOOLS, Inc.

v.

The UNITED STATES.

No. 49395.

United States Court of Claims.

June 5, 1956.

Carleton L. Feener, Pres. of Feener Technical Schools, pro se.

David Orlikoff, Washington, D. C., with whom was Acting Asst. Atty. Gen. Geo. S. Leonard, for defendant. M. Morton Weinstein, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

Plaintiff brings this action to recover sums allegedly due it for having given

training to veterans under the Servicemen's Readjustment Act of 1944, as amended, Public Law 346, 58 Stat. 284, 38 U.S.C.A. § 739.

Plaintiff, a Massachusetts corporation, had its principal office in Boston, Massachusetts. It and its predecessor in 1943 gave two courses entitled "Elements of Plastics" with a tuition rate of $95 for a course of instruction of 64 hours, and "Elements of Plastics Drafting and Mold Design" with a tuition rate of $195 for a course of instruction of 199 hours. In February 1944 plaintiff added a third course entitled "Machine Drafting and Mold Design" with a tuition rate of $195 for a course consisting of 225 hours of instruction.

Early in 1946 plaintiff instituted a course of 52 weeks' duration and 1,312 hours of instruction, entitled "Machine Drafting and Mold Design," at a total charge of $784. Subsequently two further courses were added: "Machine Drafting," a 52-week course, and "Piping Drafting," likewise 52 weeks in duration. As of May 14, 1948, plaintiff was charging $715 as tuition for the three afore-mentioned courses and between $40 and $48.73 each for books, supplies, and other expenses. On that date the Veterans Administration (VA) sent a letter to plaintiff tabulating plaintiff's courses and the charges for each. The letter is reproduced in finding 6. Between May 14 and June 30, 1948, plaintiff continued to be paid at the rates set forth in the letter.

On May 17, 1948, the VA promulgated a regulation, commonly referred to as Change 4 to Veterans Administration Manual M7–5, published in 13 F.R. 2695 et seq., subsequently issued in somewhat modified form and, as such, found in 38 C.F.R. 21.530, 21.570 (1949 Ed.). This regulation provided that, effective July 1, 1948, before payments for tuition and other charges were made to certain defined schools, it would be necessary to negotiate a contract between them and the VA. The VA determined that plaintiff was one of the schools covered by the new regulation and began negotiations for a contract with plaintiff. On July 26, 1948, plaintiff and the VA entered into a memorandum agreement by which plaintiff agreed to train veterans under the Servicemen's Readjustment Act of 1944, *supra,* 38 U.S.C.A. § 701 et seq., at rates to be mutually agreed upon in a formal contract. Despite many efforts the parties never came to an understanding on the rates. The VA submitted a contract for plaintiff's execution based on a "fair and reasonable determination" of the tuition rate in the amount of $602.86 per year for the day courses and $284.87 per year for the night courses. The VA's determination was made on the basis of cost data submitted by plaintiff.

The plaintiff refused to execute this contract, demanding instead $715 per year for the day courses and $357.50 per year for the night courses. For the period July 1, 1948, to August 23, 1949, plaintiff has, at various times, received payments for tuition which in all totaled $115,969.29. Had plaintiff been paid at the rates in the proposed contract it would have received only $115,636.80. Plaintiff has been fully paid for books, supplies, and other incidental expenses incurred during this time.

On August 24, 1949, there was enacted Public Law 266, 63 Stat. 631, 653. Under the terms of that act the VA was to make fair and reasonable payments for tuition to any institutions that did not have a customary cost of tuition, as defined in the act. The VA determined that plaintiff was such an institution and that a fair and reasonable rate of tuition for plaintiff's courses was $567.84 per student for a 52-week course in the day school, and $283.92 per student for a corresponding course in the night school. Substantially similar provisions were enacted into law the following year by the act of July 13, 1950, Public Law 610, 64 Stat. 336, 38 U.S.C.A. c. 12 note. The VA continued its determination that a fair and reasonable rate of tuition for

plaintiff's courses was $567.84 and $283.92 for the day and night school courses, respectively. Plaintiff's eligibility to train veterans was withdrawn on July 23, 1951. For the period August 24, 1949, to July 23, 1951, tuition payments were made to plaintiff at the rate of $567.84 per student for a 52-week course. Plaintiff claims these payments should have been at the rate of $715 per student per 52-week course. While the basis of payment for the corresponding night school courses is not entirely clear from the record, we assume that the VA paid plaintiff $283.92 per student for a 52-week course in the night school and that plaintiff is seeking payment at the rate of $357.50. For the period after August 23, 1949, to July 23, 1951, plaintiff claims the additional sum of $35,062.05.

Plaintiff presented its case to the Veterans' Education Appeals Board under Public Law 610, *supra*. That Board found against it on the issues presented to it. We shall have occasion to mention this decision in greater detail.

█ Plaintiff's principal contention is that the letter of May 14, 1948, constituted a contract between it and the Veterans Administration. The Board determined that it did not and we think the Board was right. A reading of the letter, set out in finding 6, clearly shows that no contract was intended, but rather an understanding between the parties as to what were the customary charges of the plaintiff. This conclusion finds further support in the internal directives of the VA pursuant to which the letter was sent. It is clear from them that the VA was simply making a determination of the plaintiff's charges in the administration of the statutory mandate to pay "the customary cost of tuition". Section 400 (b) of the Servicemen's Readjustment Act of 1944, *supra*, provided, *inter alia*, that:

"The Administrator shall pay to the educational or training institution, for each person enrolled in full time or part time course of education or training, the customary cost of tuition * * *." See Veterans' Regulation No. 1(A), pt. 8, subd. 5(a), 38 U.S.C.A. c. 12A.

We hold that plaintiff was paid the customary cost of tuition under the statute until July 1, 1948.

█ Change 4, *supra*, became effective on that date. The relevant provisions of this regulation are set forth in finding 8. The VA determined that plaintiff was required to execute a contract under this regulation. The regulation provides that it will be necessary for a contract to be negotiated by the VA before payments for tuition, etc., are made to an institution training veterans under Public Law 346, *supra*, where, *inter alia*, a majority of the enrollment of the institution consists of veterans in training under Public Law 346 and Public Law 16, the act of March 24, 1943, 57 Stat. 43, 38 U.S.C.A. § 701 and c. 12 note, and where the institution has increased its charges to all students subsequent to June 22, 1944, to an amount which "in the judgment of the manager, appears to be an unreasonable amount for the services rendered." Plaintiff has not produced evidence to show that the VA's determination that plaintiff had increased its charges to an unreasonable amount was improper. As of May 15, 1948, of the 216 students enrolled in the plaintiff school, 214 were veterans and only 2 non-veterans. We think, therefore, that, under the regulation, plaintiff was required to sign a contract.

On July 26, 1948, plaintiff did sign a memorandum agreement whereunder plaintiff was to educate Public Law 346 veterans enrolled in any approved course at plaintiff's institution "for fees or charges to be determined in accordance with rules, regulations, and policies of the Veterans Administration until formal contract is negotiated." Plaintiff claims the memorandum agreement was signed under duress. But since, under our view of the case, the resolution of this controversy between plaintiff and the defendant is not predicated upon it in any event, we need not pass on this question.

No formal contract was ever signed. On the basis of certain cost data submitted by plaintiff the VA determined a "fair and reasonable" tuition rate of $602.86 per student per year for the day school and $284.87 per student per year for the night school. It submitted to plaintiff for its execution a contract with these rates for the period July 1 to December 31, 1948. Plaintiff refused to sign the contract. Aside from the memorandum agreement there was no contract between plaintiff and the VA for the period July 1, 1948, to August 23, 1949. Plaintiff continued, however, to render services throughout this time and, under all the circumstances of the case, we feel it is entitled to fair and reasonable compensation for them.

Plaintiff did not produce any evidence to show that the VA's determination of $602.86 as a fair and reasonable rate of compensation for the day school course was improper. The commissioner who heard the case has found, however, that the night school courses should have been paid for at a rate of $301.43. Since plaintiff's night school courses were one-half as intensive as the day school courses, and since the night school rate in other dealings between the parties was always set at one-half the day school rate, we have adopted the commissioner's finding.

Plaintiff has objected to the fact that the VA did not consider certain cost data submitted by it. These data were rejected on the ground that they overlapped the period for which the proposed contract was to run. We do not think plaintiff can complain of this fact unless it can show that the determination actually made was improper. It has not done so. We hold, therefore, that plaintiff is not entitled to recover in this action any further amounts for the services it rendered under Public Law 346, from July 1, 1948, to August 23, 1949, with the exception of the additional amount for the night school in the net amount of $552.82 (see finding 22).

For the period August 24, 1949, to July 12, 1950, plaintiff's rights to compensation for training veterans under Public Law 346, are governed by the provisions of Public Law 266, supra. Public Law 610, supra, is the applicable statute for the period July 13, 1950, to July 23, 1951. The provisions germane to the controversy here are substantially alike in both statutes. Our discussion of plaintiff's points under one statute will therefore also cover the points it raises under the other.

The statutes provide in substance that the VA shall fix and pay a fair and reasonable rate of payment for tuition, fees, and other charges for courses taken by a veteran under Public Law 346, when the institution involved has no customary cost of tuition. The institution is defined as not having a customary cost of tuition when the majority of the students enrolled in the course in question consists of veterans under Public Law 346, or Public Law 16, supra, and when, inter alia, the institution has subsequent to June 22, 1944, increased its total tuition charges for the course to all students more than 25 percent, or the course (or a course of substantially the same length and character) was not provided for nonveteran students by the institution prior to June 22, 1944.

The VA determined that plaintiff did not have a customary cost of tuition, as defined by the statute. Plaintiff argues that this determination was erroneous because its long courses instituted after June 22, 1944, were merely extensions of the old short courses, and at a lower rate per hour. We need not decide this question since it is clear that courses of substantially the same length and character as those for which plaintiff is seeking payment were not offered prior to June 22, 1944. The enrollment apparently still was composed largely of veterans. We agree with the Board that under the statute plaintiff did not have a customary cost of tuition during the period August 24, 1949, to July 13, 1951.

Plaintiff contends, however, that both statutes had exemption clauses

which made the provisions for fair and reasonable determinations inapplicable where one or more contracts providing a rate or rates of tuition have been entered into in two successive years. In such cases the rate established by the most recent contract is to be considered the customary cost of tuition. Contracts, within the intent of this particular provision, are defined as, *inter alia*, any other agreement in writing on the basis of which tuition payments have been made from the Treasury of the United States. Plaintiff contends that the letter of May 14, 1948, was such an agreement.

We do not think payments were made to plaintiff on the basis of the aforementioned agreement. Certainly if payments were made on the basis of the agreement, they were not made on this basis for any period other than the month and a half between May 14 and July 1, 1948. The proviso is applicable only where contracts (including such agreements) have been entered into in two successive years. This obviously was not the case here.

Plaintiff contends, however, that the VA wrongfully refused to pay on the basis of the letter of May 14, 1948, and that, but for this refusal, it would have had a much longer period of time during which it could have claimed that it had received payment pursuant to a written agreement. We have already held that, under its regulations, the VA properly required the plaintiff to enter into a contract for any services after July 1, 1948. It follows, therefore, that plaintiff cannot claim that it should be treated as though it had received payment pursuant to the letter of May 14, 1948.

■ Pursuant to the mandate of the statutes, the VA set the fair and reasonable rate at $567.84 per year for the day courses and $283.92 for the night courses. These rates were set on the basis of cost data for the period May 1, 1947, to April 30, 1948. Plaintiff then submitted cost data for the period November 1, 1947, to October 31, 1948, but the VA did not consider them, insisting that plaintiff should submit its most recent cost data. Plaintiff never submitted any later cost data to the Veterans Administration. It has failed to produce any evidence in this court establishing that the above-mentioned rates were not fair and reasonable. Under the circumstances, we think plaintiff has not shown that the determination of the VA was not proper.

■ Furthermore, plaintiff withdrew the issue of the reasonableness of the rates from consideration by the Board. It is therefore not in a position to raise the issue in this court.

Plaintiff also alleges that certain conversations Dr. Feener had with officials of the VA in 1950 gave rise to a contract between plaintiff and the Government. The record does not substantiate this allegation.

■ Plaintiff contends that the payments which the Government made to him were delayed, and he seeks interest on that account. This court cannot award interest unless a statute or a contract specifically so provides. 28 U.S.C. § 2516 (1952 Ed.); United States v. N. Y. Rayon Importing Co., 329 U.S. 654, 658, 67 S.Ct. 601, 91 L.Ed. 577. Since neither condition is present here, plaintiff cannot recover interest in this action.

Plaintiff is entitled to recover the difference between the night school rate at which it was paid during the period July 1, 1948, to August 23, 1949 ($283.92), and the fair and reasonable rate of compensation of $301.43. An unpaid balance of $552.82 is due plaintiff on this account. In other respects plaintiff is not entitled to recover. Judgment will therefore be entered in favor of plaintiff in the amount of $552.82.

It is so ordered.

LARAMORE, MADDEN, WHITAKER and LITTLETON, Judges, concur.