**UNITED STATES of America,
Appellant,**

v.

**278.59 ACRES OF LAND, MORE OR LESS, Situate IN BREVARD COUN-TY, STATE OF FLORIDA, and A. Harvey Gould et al., Appellees.**

No. 23224.

United States Court of Appeals
Fifth Circuit.

Aug. 5, 1966.

Edwin L. Weisl, Jr., Asst. Atty. Gen., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., Francis G. Rearick, Atty., Dept. of Justice, Orlando, Fla., for appellant.

William D. Jones, Jr., David W. Foerster, James E. Hodge, Jones, Foerster & Hodge, Jacksonville, Fla., Crofton, Brewer, Holland, Starling & Goshorn, Titusville, Fla., for appellees.

Before BROWN and COLEMAN, Circuit Judges, and DAWKINS, District Judge.

COLEMAN, Circuit Judge:

This litigation has been around for a long time—some would feel for much too long. This is the third time, in some aspect or another, it has been in this Court. All issues have now been resolved except whether the Government owes interest on an eminent domain land acquisition, so perhaps we are now nearing an inescapable end to the dispute. In most financial differences the question of interest is generally about the last available battleground.

It was eight years ago, on March 12, 1958, that the United States filed its declaration of taking as to the land here involved, hereafter referred to as Tract 1462. Only a dollar was deposited in the district court registry as estimated compensation.

On April 11, 1958, complaint to condemn and acquire was filed.

There were adverse claims of title. On October 28, 1958, the United States and *all claimants*, including A. Harvey Gould, the actual owner and present sole appellee, stipulated that the District Court, without further notice, might make and enter a final judgment in the case, adjudicating that $31,200 *inclusive of interest* was the just compensation to be made by the United States. The District Court subsequently held the present

appellee to be the fee simple owner of the lands and we affirmed. Robbins v. Gould, 5 Cir., 278 F.2d 116, May 2, 1960.

Even before that decision was rendered, however, and at the instance of the Government, hurricane warnings were out. The United States served notice (278 F.2d at 121) that it had filed below a motion to vacate the $31,200 just compensation stipulation because it had not first been approved by the Department of Justice.

This motion to vacate resulted in another appeal, in which the denial of the motion was reversed, United States v. Gould, 5 Cir., 301 F.2d 353, April 10, 1962. The details may be found in the opinion, hence we do not repeat them here, other than to observe that the Government claimed mistake as to title, arguing that the lands had been dedicated to public use as streets, and such, and that the record title owner was not due anything more than nominal damages.

Eventually, the District Court, on May 3, 1965, tried the issue of title, found for Gould, and again denied the motion to vacate. It also added interest to its Judgment as hereafter recited. That brought this third appeal.

But while the appeal was pending, the Government admitted the validity of the original judgment of December 4, 1958. It abandoned all its contentions except to deny liability for interest at six per cent on the $31,200 from July 25, 1960 (when our first mandate reached the District Court) to September 17, 1965.

The original judgment, back in 1958, fixed just compensation at $31,200, inclusive of interest, but the United States has had the exclusive title, use, and occupancy of the land for more than eight years, while the landowner has not received his pay.

We affirm the Judgment of the District Court, requiring that interest be paid.

In Albrecht v. United States, 329 U.S. 599, 67 S.Ct. 606, 91 L.Ed. 532 (1947), upon which the Government now strongly relies, the United States made separate contracts in pais with various landowners to buy certain lands for a public purpose. The purchase price was stipulated, to be paid at indefinite future times, upon the fulfillment of certain conditions such as conveyance of a good and merchantable title. As allowed by the contracts, the Government went into immediate possession. Later, the Government attempted to rescind the contracts on the ground that the contract prices were grossly excessive and amounted to far more than the "just compensation" required by the Fifth Amendment. It filed condemnation proceedings, asking the Courts to fix just compensation and also filed declaration of taking and deposited money in amounts substantially less than the contract prices. The landowners stood upon the validity of the contracts. They were successful, although the dispute was several years in reaching the Supreme Court. The Government then paid the contract prices into Court, but without interest. The landowners claimed interest from the time of taking. The Supreme Court then held that the Government was not obligated to pay interest in these cases, reasoning that the Fifth Amendment does not prohibit landowners and the Government from agreeing between themselves as to what is just compensation for property taken nor from reducing that agreement to contract form. The Supreme Court said:

"And certainly where a party to such a contract stands upon its terms to enforce them for his own advantage, he cannot at the same time successfully disavow those terms so far as he conceives them to be to his disadvantage. That is precisely the position of the petitioners here. They made contracts for the transfer and possession of lands, at prices concerning which they have never complained. At the end of prolonged litigation, the Government was barred from showing that compensations fixed by the contracts were not just, but were excessive. Having thus bound the Government to the contract prices as

the measure of 'just compensation', which prices, to say the least, generously meet the Fifth Amendment's 'just compensation' requirement, they now seek to escape the burdens of these identical contract provisions. They invoke the Fifth Amendment in pursuit of something more than the compensation for which their contracts provide—contracts which they are not willing to abandon."

The Court further said:

"[W]hen a court determines just compensation, it first fixes bare value at the time of the taking and adds a sum to compensate for deferred payment of bare value so as to make the property owner whole as required by the Fifth Amendment. We do not think this formula fits contractual arrangements for compensation. Exactly what factors the parties consider, in addition to bare value, cannot easily be ascertained. This very group of transactions illustrates that there may be many such additional factors. For example, all the contracts here provided for immediate Government possession, though none contemplated immediate payments. We cannot know what amounts were added in the bargains to the bare market values as estimated, though unarticulated, allowances for the anticipated delays in payment. And other factors, which need not be enumerated, entered into the contract prices. These things demonstrate the inadvisability of applying a constitutional rule as to interest, specially designed to enable courts to calculate 'just compensation,' to an entirely different situation in which parties, supposedly with due regard to their own interests, bargain between themselves as to compensation. Since these petitioners have chosen to stand on their contract terms as to the amount they will receive for their property, rather than to have 'just compensation,' in the constitutional sense, fixed by the courts, we must look to those terms for the measure of their compensation, including their right to that part of compensation which courts have called interest."

At another point, it was said:

"Turning now to the right to interest under the contracts, and apart from the contention regarding the Fifth Amendment, we find that the contracts have no provision for payment of interest. No statute authorizes the payment of interest in cases like this. In the absence of specific contract or statutory provisions no interest runs against the Government even though the Government's payment for the contract purchases be delayed. See Smyth v. United States, 302 U.S. 329, 353, 58 S.Ct. 248, 82 L.Ed. 294, 14 A.L.R. 807; United States v. Thayer-West Point Hotel Co., 329 U.S. 585, 588, 67 S.Ct. 398, 399, [91 L.Ed. 521]; United States v. New York Rayon Importing Co., et al., 329 U.S. 654, 659 [660], 67 S.Ct. 601, 604 [91 L.Ed. 577]."

We think this language of great importance:

"But where payment of that fair market value is deferred, it has been held that something more than fair market value is required to make the property owner whole, to afford him 'just compensation.' This additional element of compensation has been measured in terms of reasonable interest. Thus, 'just compensation' in the constitutional sense has been held, absent a settlement between the parties, to be fair market value at the time of taking plus 'interest' from that date to the date of payment."

At the outset, there are major differences between the situations existing in *Albrecht* and here. In *Albrecht*, prior to the contracts between the parties there was no declaration of taking and there were no condemnation proceedings. These came after the dispute had arisen about true property values. These declarations of taking and condemnations never had any effect because the landowners successfully stood on the contracts. Under these circumstances, the

Supreme Court concluded that the owners could not stand on the contracts and, at the same time, collect interest not provided in the contracts or otherwise provided by law.

In the case now before us, the Government did file its declaration of taking and did file its complaint in condemnation. It paid only one dollar into Court. The parties thereafter got together and agreed that as of October 20, 1958, the Court might make and enter its final judgment, adjudicating $31,200 inclusive of interest to be just compensation. Ordinarily, under 40 U.S.C.A. 258a, the money should have that day been deposited in the Court if the running of interest was to be stopped. The parties knew that the title was in dispute, that the Court would have to settle those issues, and that no one was going to be paid until this was done. So no money was deposited or paid to anybody. No deposit was ever made until September 17, 1965. Title in Gould was not adjudicated until our first mandate reached the District Court on July 25, 1960. The Government has never disputed the fairness of the $31,200 valuation. After making a formal stipulation and allowing a judgment to be entered thereon, the Government simply raised the claim that the property in question had already been dedicated to the public and that Gould was therefore not entitled to any pay whatever. This contention has been abandoned, after the Government has had use and title for nearly eight years by its declaration of taking.

Title 40, Section 258a, U.S.C.A. provides that upon a declaration of taking

"compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court."

These being the facts, and this being the law, did the agreed stipulation and judgment of 1958, fixing an amount "inclusive of interest", bar the collection of interest from and after the date this Court filed its mandate naming the true owner? As previously stated, we think not.

Unlike *Albrecht,* the Government here instituted the taking by invoking 40 U.S.C.A. 258a. It filed its condemnation proceedings. It deposited only a dollar in Court. The stipulation, which became a judgment, relieved the Government of paying interest on $31,200 from the day of taking and obviously intended to waive interest until title was adjudicated. Nothing was said and thus there was no waiver as to the Government litigating the title a second time after this Court on appeal had disposed of the matter. When the mandate was issued from this Court July 25, 1960, the deposit should have been made as required by Statute. This was not done until 1965.

Once title was adjudicated in this case, the Government could not refuse to make the statutory deposit, continue to attack title on grounds which proved to be without merit, and thereby defeat the owner of the interest provided by the statute.

We think the judgment of the District Court squares with both the Constitutional requirements of just compensation as well as the mandate of 40 U.S.C.A. 258a.

Affirmed.