**MARATHON OIL COMPANY and Mobil Oil Exploration & Producing Southeast, Inc., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 02–102C.

United States Court of Federal Claims.

June 19, 2003.

Griffith L. Green, attorney of record for plaintiff.

Mark A. Melnick, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant.

## OPINION

MEROW, Senior Judge.

This is a claim for post-judgment interest. The plaintiffs seek interest of approximately $1.446 million each on a judgment against the United States in the U.S. Court of Appeals for the Federal Circuit, computed from December 28, 2000, the date judgment was entered, to May 1, 2001, the date plaintiffs received payment of their awards. Plaintiffs assert that they are entitled to recover interest on the Federal Circuit's judgment under 28 U.S.C. § 1961(c)(2), which allows interest on "final judgments" by that court. Defendant moves to dismiss the complaint on the ground that the Court of Federal Claims lacks jurisdiction to entertain this action. In particular, defendant asserts that the United States has not waived its sovereign immunity to the plaintiffs' suit for post-judgment inter-

est. The court determines that it does have jurisdiction of the case under the Tucker Act because the plaintiffs' action constitutes a claim for money against the United States "founded .... upon .... [an] Act of Congress." 28 U.S.C. § 1491(a). But the court agrees with defendant that the claim is meritless because the act in question, 28 U.S.C. § 1961(c)(2), does not waive the government's sovereign immunity to post-judgment interest on the judgment at issue here.

*FACTUAL AND PROCEDURAL BACKGROUND*

This case has its genesis in contracts that the plaintiffs, Marathon Oil Company ("Marathon") and Mobil Oil Exploration and Producing Southeast, Inc. ("Mobil"), entered into with the United States more than twenty years ago to explore and develop oil and gas leases on the outer continental shelf off the coast of North Carolina. The United States has jurisdiction, control, and power of disposition over submerged lands on the outer continental shelf that extend beyond state-owned submerged lands. See 43 U.S.C. §§ 1301 *et seq.* Under the Outer Continental Shelf Lands Act ("OCSLA") the Secretary of the Interior is empowered to sell leases that "entitle the lessee to explore, develop, and produce the oil and gas contained within the leased area, conditioned upon" various applicable requirements. 43 U.S.C. § 1337(b). In 1981, pursuant to OCSLA, Marathon and Mobil paid more than $78 million apiece to the United States for oil and gas leases in five tracts off the coast of North Carolina.

In 1990 the federal government enacted the Outer Banks Protection Act ("OBPA"), P.L. No. 101–380, § 6003, 104 Stat. 484, 555–58 (Aug. 18, 1990), which substantially altered the statutory scheme for issuance of the permits required to explore and develop the tracts. The effect of the OBPA was to impair the plaintiffs' rights under their lease contracts. In 1992 Marathon and Mobil joined a lawsuit in the Court of Federal Claims filed by other companies with oil and gas leases similarly impaired by the OBPA. The complaints alleged that the United States had breached the lease agreements and demanded restitution of the amounts the plaintiffs paid for the leases in 1981. In April 1996 the court found the United States liable for breach of its lease contracts. See *Conoco, Inc. et al. v. United States*, 35 Fed. Cl. 309, 336 (Fed.Cl.1996). After a series of subsequent proceedings the court issued separate orders on July 18, 1997 (filed on July 24, 1997) directing the entry of judgment in favor of Marathon in the amount of $78,242,368.59 and partial judgment in favor of Mobil in the amount of $78,257,565.00.

The United States appealed the Court of Federal Claims judgments to the Federal Circuit, which reversed on May 13, 1999. See *Marathon Oil Co. v. United States*, 177 F.3d 1331, 1340 (Fed.Cir.1999). The Court of Federal Claims thereupon vacated its judgments on May 28, 1999, and entered a new judgment in favor of defendant on June 1, 1999. The plaintiffs appealed the Federal Circuit decision to the Supreme Court, which granted a writ of certiorari and, in a ruling issued on June 26, 2000, reversed the Federal Circuit and remanded the case for further proceedings. See *Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604, 624, 120 S.Ct. 2423, 147 L.Ed.2d 528 (2000). The Supreme Court held that "the government broke its promise; it repudiated the contracts; and it must give the companies their money back." *Id.* at 607, 120 S.Ct. 2423.

On remand the Federal Circuit issued a new opinion on December 28, 2000, in which it rejected the government's argument that the plaintiffs' awards should be reduced by the decreased value of the leases at the time of breach [1] and affirmed the prior judgments

---

1. As the Federal Circuit observed in its opinion, the Court of Federal Claims had reached the same conclusion in its 1997 judgments in which it "rejected the government's argument that any restitution should be offset by the asserted reduction in the market value of the leases due to the reduced price of oil and gas at the time of the government's breach." *Marathon Oil Co. v.*

*United States*, 236 F.3d at 1315 (Fed.Cir.2000). The Federal Circuit found that the Supreme Court had ruled on this issue as well, citing the following language from its decision: "the law entitles the companies to .... restitution whether the contracts would, or would not, ultimately have produced a financial gain or led them to obtain a definite right to explore." *Id.* at 1315

of the Court of Federal Claims from July 1997. See *Marathon Oil Co. v. United States,* 236 F.3d 1313 (Fed.Cir.2000). The United States filed a petition for rehearing by the Federal Circuit panel. By order dated February 16, 2001, the Federal Circuit denied the petition for rehearing and stated that the court's mandate would issue on February 23, 2001.

On February 27, 2001, the Court of Federal Claims ordered that its judgments for the plaintiffs from July 1997 be reinstated, effective as of their original dates, awarding $78,242,368.59 to Marathon and $78,257,565.00 to Mobil. The clerk of court entered judgment on February 28, 2001. The plaintiffs then wrote letters to the Judgment Fund Group, Department of the Treasury ("Treasury"), on March 2, 2001 (Marathon) and March 16, 2001 (Mobil) requesting payment of their awards. The letters were submitted to Treasury by plaintiffs' counsel in separate cover letters dated March 2, 2001, and March 19, 2001, respectively, along with the original transcripts of the judgments. Neither plaintiff requested in its letter to Treasury that interest be paid on its award. Nor did plaintiffs' counsel make any such request. On March 28, 2001, the Department of Justice ("DoJ") sent a letter to Treasury enclosing the two final judgments of the Court of Federal Claims and stating that no further judicial review would be sought. DoJ requested that the awards be certified and paid, without interest, from the Judgment Fund established by 31 U.S.C. § 1304. Marathon and Mobil received payment of their awards on May 1, 2001.

On June 8, 2001, the plaintiffs submitted another letter to the Judgment Fund Group, Department of the Treasury, demanding payment of post-judgment interest at the rate specified in 28 U.S.C. § 1961(a), computed daily from December 28, 2000, the date of the Federal Circuit's judgment on remand from the Supreme Court, to May 1, 2001, the date of payment. According to plaintiffs, 28 U.S.C. § 1961(a) prescribes an annual interest rate of 5.44 % on their awards, thus

(quoting *Mobil Oil Exploration & Producing Southeast, Inc. v. United States,* 530 U.S. at 623–

entitling Marathon to post-judgment interest in the amount of $1,446,004.72 and Mobil to post-judgment interest of $1,446,285.56. By letter dated August 28, 2001, however, DoJ, acting on behalf of Treasury, denied the claims for post-judgment interest. The letter stated that "the government has only waived sovereign immunity to interest upon a judgment of the Federal Circuit when the Supreme Court has affirmed the judgment upon petition by the United States," a situation that did not apply in the case at bar because it was not the government who appealed the Federal Circuit's judgment to the Supreme Court.

Marathon and Mobil filed their complaint in the Court of Federal Claims on February 5, 2002, alleging that the government's refusal to pay post-judgment interest violates 28 U.S.C. § 1961(c)(2). The issue is presented to the court on defendant's motion to dismiss and plaintiffs' opposition thereto. The briefs are comprehensive and oral argument is not required.

## DISCUSSION

It is a fundamental doctrine of law that money damages cannot be recovered from the United States unless the government has waived its sovereign immunity. With particular respect to interest, the Supreme Court has stated that "[i]n the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." *Library of Congress v. Shaw,* 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). See also *United States v. N.Y. Rayon Importing Company,* 329 U.S. 654, 658–59, 67 S.Ct. 601, 91 L.Ed. 577 (1947) ("[I]in the absence of constitutional requirements [i.e., the Fifth Amendment guarantee of "just compensation" for the public taking of private property], interest can be recovered against the United States only if express consent to such a recovery has been given by Congress. And Congress has indicated .... that its consent can take only two forms: (1) a specific provi-

24, 120 S.Ct. 2423).

sion for the payment of interest in a statute; (2) an express stipulation for the payment of interest in a contract duly entered into by agents of the United States.") This doctrine is well recognized in the Federal Circuit. See *Alaska Airlines, Inc. v. Johnson,* 8 F.3d 791, 798 (Fed.Cir.1993) ("Interest may not be recovered against the government in the absence of an explicit waiver of sovereign immunity for that purpose"); *Zumerling v. Marsh,* 783 F.2d 1032, 1034 (Fed.Cir.1986) (" '[e]xpress consent to the payment of interest must be found in either a special statute or an express contractual provision. The intent by Congress to permit the recovery of interest cannot be implied,' and must be strictly construed." (quoting *Fidelity Construction Co. v. United States,* 700 F.2d 1379, 1383 (Fed.Cir.), cert. denied, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983)).)

### A.

█  Plaintiffs contend that 28 U.S.C. § 1961(c)(2) constitutes an express waiver of sovereign immunity entitling them to post-judgment interest on their awards. The statute reads as follows:

Except as otherwise provided in paragraph (1) of this subsection [which applies only to tax cases], *interest shall be allowed on all final judgments against the United States in the United States Court of Appeals for the Federal Circuit,* at the rate provided in subsection (a) and as provided in subsection (b).[2]

28 U.S.C. § 1961(c)(2) (2000) (emphasis added). The threshold question before the Court of Federal Claims is whether the ruling plaintiffs received from the Federal Circuit on December 28, 2000, was a "final judgment" of that court within the meaning of the statute. If not, then there has been no waiver of sovereign immunity with respect to the payment of interest in this case.

As explained by this court in *Ulmet v. United States,* 19 Cl.Ct. 527, 534 (1990), the

term "final judgment" means a judicial ruling which "determines the rights of the parties and disposes of all of the issues involved so that no further action by the court will be necessary in order to settle and determine the entire controversy." (Quoting Black's Law Dictionary 567 (5th ed.1979).) After a careful reading of the Federal Circuit's opinion of December 28, 2000, this court holds it was not a "final judgment" of the appellate court within the meaning of 28 U.S.C. § 1961(c)(2). In the opening paragraph of the Federal Circuit's four-page opinion, the court noted that its prior decision (denying the plaintiffs' claims) had been reversed by the Supreme Court. Accordingly, the Federal Circuit was "now apply[ing] the [Supreme] Court's ruling to the *judgments of the Court of Federal Claims,* and affirm[ing] the *judgments of that court.*" Complaint, Exh. C at 1 (emphasis added). In the final paragraph of its opinion, the Federal Circuit stated that *"[t]he Court of Federal Claims awarded* $78,242,368.59 to Marathon .... [and] $78,257,565.00 to Mobil. *The calculation of these amounts is not in dispute ....* The *judgments of the Court of Federal Claims* are affirmed." *Id.* at 4 (emphasis added). Though the Federal Circuit's clerk of court entered "Judgment" in the case the same day, that document likewise stated that "[t]he judgments of the Court of Federal Claims are affirmed." Defendant's Motion to Dismiss ("Motion to Dismiss"), Apx. at 1.

Thus, the language of the Federal Circuit's opinion and judgment, both dated December 28, 2000, clearly state that the court was affirming the prior judgments of the Court of Federal Claims, not substituting its own judgment. It was the Court of Federal Claims that decided, in 1997, that Marathon and Mobil were entitled to awards, and it was the Court of Federal Claims that determined the amounts of those awards. The Federal Circuit played no part in reaching those decisions. It merely ratified the work

---

**2.** "The rate provided in subsection (a)" refers to the following statutory language: "[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week pre-

ceding the date of the judgment." 28 U.S.C. § 1961(a). "[A]s provided in subsection (b)" refers to the following statutory language: "Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually." 28 U.S.C. § 1961(b).

of the trial court, pursuant to the Supreme Court's remand, three and a half years later. In short, the Federal Circuit had no substantive input in the judgments of the Court of Federal Claims.

Furthermore, following the issuance of the Federal Circuit's mandate on February 23, 2001, it was the Court of Federal Claims that issued the order, on February 27, 2001, formally reinstating its earlier judgments. In the words of the Court of Federal Claims, "it is ORDERED that .... the judgments in favor of plaintiffs dated July 24, 1997 .... awarding $78,242,368.59 to plaintiff Marathon and $78,257,565.00 to plaintiff Mobil, be RE-INSTATED effective as of their original dates." Motion to Dismiss, Apx. at 4 (emphasis in the original). The clerk of the Court of Federal Claims entered "Judgment" the following day, February 28, 2001, stating that "[p]ursuant to the court's Order [of February 27, 2001] .... IT IS ORDERED AND ADJUDGED this date .... that the judgments of this court in favor of plaintiffs dated July 24, 1997 .... are reinstated and shall be effective as of their original dates." *Id.* at 5 (emphasis in the original). Thus, it was the Court of Federal Claims, not the Federal Circuit, that issued the final judgments in this case by reinstating the monetary judgments it initially issued to Marathon and Mobil in 1997.

In their letters to Treasury in March 2001 requesting payment both plaintiffs identified the Court of Federal Claims, not the Federal Circuit, as the court of judgment. Thus, under a caption referring to the case as "No. 92–331C (U.S. Court of Federal Claims)," Marathon wrote that "[y]ou [Treasury] have been presented with a judgment in the above-captioned proceeding awarding Marathon Oil Company $78,242,368.59." Motion to Dismiss, Apx. at 9. Furthermore, Marathon referred to the court's judgment as final. ("This is a final judgment and no further review will be sought by Marathon ...." *Id.*) Mobil's letter to Treasury was the same in every pertinent respect as Marathon's. It identified the case as "No. 92–331C (U.S. Court of Federal Claims)" and stated that "[y]ou have been presented with a judgment in the above-captioned proceeding

awarding Mobil Oil Exploration & Producing Southeast, Inc. $78,257,565.00." *Id.* at 12. Mobil's letter likewise referred to the court's judgment as final. ("This is a final judgment and no further review will be sought by Mobil ...." *Id.*) Nowhere in either letter did the plaintiffs mention the Federal Circuit, cite the case number of the appeal before the Federal Circuit, or refer to the monetary judgments they had received as final judgments of the appellate court. To the contrary, each plaintiff identified the monetary judgment it had received by the case number in the Court of Federal Claims. Thus, they evidently had this court in mind when they referred to their respective awards as a "final judgment."

In the separate letters plaintiffs' counsel submitted to Treasury in March 2001, which enclosed the original transcripts of the judgments and copies of the plaintiffs' own letters to Treasury, the cases were likewise captioned as "No. 92–331 (United States Court of Federal Claims)." Plaintiffs' counsel did not mention the Federal Circuit nor cite the case number of the appeal before the Federal Circuit in either letter. Nor did plaintiffs' counsel refer to the monetary judgments plaintiffs had received as final judgments of the appellate court. Reading the letters of plaintiffs' counsel in conjunction with the plaintiffs' own letters to Treasury, discussed above, it is clear to this court that the judgments plaintiffs' counsel submitted to Treasury—on which payment was requested— were those of the Court of Federal Claims, not the Federal Circuit.

Indeed, had plaintiffs or their counsel believed that the Federal Circuit's opinion on December 28, 2000, and the judgment entered by the clerk of court that day, constituted a "final judgment" within the meaning of 28 U.S.C. § 1961(c)(2), they would presumably have written to Treasury requesting payment of their awards at that time. The fact that they did not do so until after the Court of Federal Claims reinstated its prior monetary judgments two months later is indicative of which rulings they actually considered to be the "final judgments."

Lastly, the Department of Justice letter to Treasury on March 28, 2001, certifying the

amounts of the awards to Marathon and Mobil, leaves no doubt that they were payable to the plaintiffs pursuant to final judgments of the Court of Federal Claims, not the Federal Circuit. The pertinent language of the DoJ letter, signed by the Director of the Commercial Litigation Branch, reads as follows: "I certify that the amounts stated in the *enclosed two final judgments dated July 24, 1997, and reinstated on February 28, 2001,* are payable by the United States." Motion to Dismiss, Apx. at 13 (emphasis added). The judgments bearing those two dates were issued by the Court of Federal Claims, not the Federal Circuit.

Thus, all of the players in this drama—Marathon, Mobil, plaintiffs' counsel, DoJ, and Treasury—treated the Court of Federal Claims judgments of July 24, 1997, reinstated on February 28, 2001, as the basis for the monetary awards in this action. In the parties' correspondence with Treasury prior to payment of the awards on May 1, 2001, both sides identified the rulings of the Court of Federal Claims as "final judgments." Yet plaintiffs propose the court ignore that history and transfer the label of "final judgment" in this action to the Federal Circuit ruling of December 28, 2000. No viable basis for such a transfer has been shown.

The court finds that the plaintiffs received their awards in this case pursuant to final judgments of the Court of Federal Claims, not the U.S. Court of Appeals for the Federal Circuit. The opinion and "judgment" of the Federal Circuit on December 28, 2000 was not a "final judgment" within the contemplation of 28 U.S.C. § 1961(c)(2), but an antecedent to the final judgments reinstated by the Court of Federal Claims on February 28, 2001. Therefore, the statute allowing interest on final judgments of the Federal Circuit, 28 U.S.C. § 1961(c)(2), does not apply to the final judgments for Marathon and Mobil in this case and does not waive the sovereign immunity of the United States from the payment of interest on plaintiffs' awards.

### B.

Even if the court were to find that the final judgment in this action was issued by the Federal Circuit, the plaintiffs would still not be entitled to post-judgment interest on their awards under 28 U.S.C. § 1961(c)(2). To accurately interpret this provision it must be read in conjunction with the entire statutory section in which it is embedded. 28 U.S.C. § 1961—entitled "Interest"—deals broadly with the allowance and computation of interest on money judgments in federal courts, including district court civil cases, the Federal Circuit, and the Court of Federal Claims. The pertinent parts of the section read as follows:

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court..... Such interest shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1–year constant maturity Treasury yield .... for the calendar week preceding the date of judgment.

(b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.

(c)(1) This section shall not apply in any judgment of any court with respect to any internal revenue tax case. Interest shall be allowed in such cases at the .... rate of ....

(c)(2) Except as otherwise provided in paragraph (1) of this subsection, *interest shall be allowed on all final judgments against the United States in the United States Court of Appeals for the Federal Circuit at the rate provided in subsection (a) and as provided in subsection (b).*

(c)(3) Interest shall be allowed, computed, and paid on judgments of the United States Court of Federal Claims only as provided in paragraph (1) of this subsection or in any other provision of law.

(c)(4) This section shall not be construed to affect the interest on any judgment of any court not specified in this section.

28 U.S.C. § 1961(a)—(c) (2000) (emphasis added).

With respect to 28 U.S.C. § 1961(c)(2), therefore, interest is allowable on final judgments of the Federal Circuit at the same rate as interest on district court civil judgments under 28 U.S.C. § 1961(a) and "as provided in subsection (b)" [28 U.S.C. § 1961(b)].[3] That subsection, as quoted above, provides for the daily computation of interest until the judgment is paid "*except* as provided in *section 2516(b) of this title* and *section 1304(b) of title 31.*" 28 U.S.C. § 1961(b) (2000) (emphasis added). The first "exception" in subsection (b) provides, in pertinent part, as follows:

> Interest on a *judgment* against the United States *affirmed by the Supreme Court after review on petition of the United States* is paid at a rate equal to [the rate at which interest is paid on district court civil judgments, as stated in 28 U.S.C. § 1961(a), *supra*].

28 U.S.C. § 2516(b) (2000) (emphasis added). The only kind of judgment which fits that language is a money judgment for plaintiff by the Federal Circuit which is appealed by the government to the Supreme Court and upheld for plaintiff. The second exception in subsection (b)—which is part of the Judgment Fund statute—provides, in pertinent part, as follows:

> *Interest* may be paid from the appropriation made by this section .... *on a judgment of the* Court of Appeals for the *Federal Circuit or* the United States *Court of Federal Claims under section 2516(b) of title 28,* only *from* the *date of filing* of the transcript of *the judgment* with the Secretary of the Treasury *through* the day before the *date of the mandate of affirmance.*

31 U.S.C. § 1304(b)(1)(B) (2000) (emphasis added). The only types of judgments fitting that language are money judgments for plaintiffs (a) by the Federal Circuit or (b) by the Court of Federal Claims *and* (on appeal therefrom) by the Federal Circuit, which are appealed by the government to the Supreme Court and upheld for plaintiffs.

The court finds the foregoing statutory language ambiguous with respect to whether the "exceptions" cited above in 28 U.S.C. § 1961(b)—*i.e.,* 28 U.S.C. § 2516(b) and 31 U.S.C. § 1304(b)(1)(B)—are meant to limit the *allowance* of post-judgment interest (a plaintiff's fundamental entitlement thereto, in other words) exclusively to those Federal Circuit judgments against the United States which are affirmed by the Supreme Court after appeal by the government, or whether the exceptions are meant simply to modify the time period for the *computation* of post-judgment interest on a discrete subset of Federal Circuit judgments—those that are appealed by the government to the Supreme Court and affirmed for plaintiffs. To help resolve this ambiguity it is appropriate to examine the legislative history of the relevant statutes.

Historically, 28 U.S.C. § 2516(b) limited the payment of interest by the Federal Circuit's predecessor, the U.S. Court of Claims, in the exact manner the statute does today with respect to the Federal Circuit—namely, to "judgment[s] against the United States affirmed by the Supreme Court after review on petition of the United States." 28 U.S.C. § 2516(b) (1976). See also *Ulmet, supra,* 19 Cl.Ct. at 538. Thus, plaintiffs were entitled to interest only if they received an award from the Court of Claims which was appealed by the government to the Supreme Court and upheld for plaintiffs by the high court. In addition, § 724a of the Judgment Fund statute limited the time period for the payment of interest in roughly the same manner as today's successor statute, § 1304(b)(1)(B). See 31 U.S.C. § 724a (1976 Supp. IV 1980).

When Congress was deliberating the Federal Courts Improvement Act of 1982, P.L. 97–164, 96 Stat. 25—which established the U.S. Court of Appeals for the Federal Circuit (by merging the appellate functions of the U.S. Court of Claims and the U.S. Court of Customs and Patent Appeals), created the U.S. Claims Court (now the Court of Federal Claims) out of the trial division of the Court of Claims, and enacted, *inter alia,* the "Interest" provisions codified in 28 U.S.C. § 1961(b) and (c)—a proposal was considered

---

**3.** The subsection does not apply to any judgments against the United States in tax cases.

which would have expanded the government's liability for interest on judgments against the United States. In particular, the proposal would have extended the liability of the United States for post-judgment interest to all adverse judgments of the new U.S. Claims Court (except tax cases) if the United States appealed those judgments to the Federal Circuit and failed to prevail. See *Ulmet, supra,* 19 Cl.Ct. at 537–38; *Thompson v. Kennickell,* 797 F.2d 1015, 1022–23 (D.C.Cir. 1986). The legislative history of the Act indicates that Congress decided against expanding the government's waiver of sovereign immunity in that manner, and dropped the proposal. *Id.* As observed by this court in *Ulmet,* "[i]t appears that the intent of Congress in promulgating what is now 28 U.S.C. § 1961(c)(2) (1982) was to permit the payment of interest only in those cases in which an adverse judgment is rendered against the government by the United States Court of Appeals for the Federal Circuit and appealed [unsuccessfully] to the United States Supreme Court, unless otherwise provided for by an express waiver of sovereign immunity in a separate statute .... " *Id.* at 538. See also *Thompson v. Kennickell, supra,* 797 F.2d at 1022–25.

Thus, the Federal Courts Improvement Act preserved the status quo by retaining in the new Federal Circuit the historically narrow waiver of sovereign immunity that applied in the old Court of Claims for the payment of interest on money judgments against the government—namely, to judgments against the United States that are appealed to the Supreme Court and affirmed for the plaintiffs. That is not the situation in the case at bar. Here, the Federal Circuit held for the United States, overturning a judgment for plaintiffs in the Court of Federal Claims. So it was *plaintiffs* who petitioned for review by the Supreme Court, not the *United States* as required for interest to be allowed on a judgment under 28 U.S.C. § 1961(c)(2) and paid in accordance with 28 U.S.C. § 2516(b) and 31 U.S.C. § 1304(b)(1)(B).

Plaintiffs argue that 28 U.S.C. § 1961(b), cross-referenced in 28 U.S.C. § 1961(c)(2), should be interpreted as mandating the payment of interest on their awards because the provision applies to all judgments against the government *except* as provided in 28 U.S.C. § 2516(b) and 31 U.S.C. § 1304(b)—*i.e.,* to all judgments, like the ones at issue here, that were *not* "affirmed by the Supreme Court after review on petition of the United States." 28 U.S.C. § 2516(b). As previously discussed, however, the court does not agree with the plaintiffs' interpretation of subsection (b). It is telling, in the court's view, that plaintiffs are unable to cite any case law supporting their interpretation of this subsection. The crucial fact is that 28 U.S.C. § 1961(b) deals with the *computation* of interest on a judgment, not the question of *entitlement* to such interest. The exceptions in that subsection apply equally to the computation of interest, not entitlement thereto. Accordingly, the applicability of subsection (b) presupposes that the plaintiffs are entitled to interest on the judgments in question. But Marathon and Mobil have not established their entitlement to any such interest because they cannot demonstrate a waiver of sovereign immunity by the government. Thus, 28 U.S.C. § 1961(b) is useless to the plaintiffs.

In summation, even if the monetary judgments Marathon and Mobil received in this case were deemed to be "final judgments" of the Federal Circuit, the plaintiffs would not be entitled to post-judgment interest thereon because the judgments to not satisfy the requirements for a waiver of sovereign immunity set forth in 28 U.S.C. § 1961(c)(2).

### C.

■ Since the final judgments in this case were issued by the Court of Federal Claims, the basic statute governing the allowability of interest is 28 U.S.C. § 2516(a), which provides as follows:

> Interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof.

28 U.S.C. § 2516(a) (2000). In the case at bar, neither plaintiff alleges that its lease agreement with the United States contains a provision allowing for interest on a monetary

judgment. Nor have plaintiffs cited any statutory authority entitling them to interest on their monetary judgments against the United States. So there has been no waiver of sovereign immunity by the United States allowing for interest in this case, as required under 28 U.S.C. § 2516(a).

Another statutory provision addressing the allowance, computation, and payment of interest on judgments of this court, enacted as part of the Federal Courts Improvement Act of 1982, *supra*, is 28 U.S.C. § 1961(c)(3). It provides as follows:

> Interest shall be allowed, computed, and paid on judgments of the United States Court of Federal Claims only as provided in paragraph (1) of this subsection or in any other provision of law.

28 U.S.C. § 1961(c)(3) (2000). The "paragraph (1)" referenced therein deals with tax cases, which leaves "any other provision of law" as the only possible source of a waiver of sovereign immunity from the payment of interest in this case. The plaintiffs have not cited any such provision of law, however, and the court has no knowledge of any. Indeed, the plaintiffs pointedly reject 28 U.S.C. § 1961(c)(3) as a basis for their claim, stating that they "are not seeking interest under that provision." Plaintiffs' Opposition to Motion to Dismiss at 5 (note 1).

Consistent with the absence of any waiver of sovereign immunity in this case, the DoJ letter to Treasury of March 28, 2001, specifically indicated that *no interest* was to be paid on the principal amounts awarded to Marathon and Mobil by the Court of Federal Claims. A copy of the letter was sent to plaintiffs' counsel. So the plaintiffs were on notice in late March 2001 that DoJ was certifying their awards for payment without interest, and there is no evidence that they objected thereto prior to Treasury's payment of the awards ($78,242,368.59 to Marathon and $78,257,565.00 to Mobil) on May 1. Plaintiffs' initial approach, discernable in their letters to Treasury in March 2001, that the final judgments had been issued by the Court of Federal Claims, not the Federal Circuit, and did not accrue interest was valid. Plaintiffs' subsequent June 8, 2001, request for interest from December 28, 2000, the date of the asserted Federal Circuit judgment, to May 1, 2001, the date of payment lacks requisite statutory support.

### CONCLUSION

For the reasons discussed herein the court concludes that the plaintiffs are not entitled to the post-judgment interest they seek on their money judgments from the Court of Federal Claims.

The clerk is ordered to enter **JUDGMENT** for defendant and **DISMISS** the complaint.

Each party shall bear its own costs.