**Slip Op. 04-96**

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS**

_____
                                       :

NMB SINGAPORE LTD. and             :
PELMEC INDUSTRIES (PTE) LTD.;     :
NSK-RHP EUROPE LTD., RHP BEARINGS LTD.  :
and NSK BEARINGS EUROPE LTD.;     :
SKF USA INC., SKF INDUSTRIE S.p.A.,   :
SKF FRANCE S.A., SARMA and SKF GmbH;   :
NTN BEARING CORPORATION OF AMERICA,    :
AMERICAN NTN BEARING MANUFACTURING     :
CORPORATION, NTN BOWER CORPORATION,    :
NTN DRIVESHAFT INCORPORATED,        :
NTN-BCA CORPORATION and           :
NTN CORPORATION,                  :
                                     :
           Plaintiffs,       :
                                 :
           and            :
                                 :
THE BARDEN CORPORATION (U.K.) LIMITED  :   Consol. Court No.
and THE BARDEN CORPORATION;      :   00-07-00373
FAG ITALIA S.p.A.,            :
FAG KUGELFISCHER GEORG SCHAFER AG and  :
FAG BEARINGS CORPORATION,       :
                                 :
           Plaintiff-Intervenors,  :
                                 :
           v.            :
                                 :
UNITED STATES,                :
                                 :
           Defendant,        :
                                 :
           and            :
                                 :
TIMKEN U.S. CORPORATION,        :
                                 :
           Defendant-Intervenor.  :
_____:

[The Commission's <u>Remand Determination</u> is affirmed. Case dismissed.]

    White & Case LLP (<u>Walter J. Spak</u>, <u>Christopher F. Corr</u>, <u>Lyle B. Vander Schaaf</u> and <u>Jonathan Seiger</u>) for NMB Singapore Ltd. and

Pelmec Industries (PTE) Ltd., plaintiffs.

Crowell & Moring LLP (Matthew P. Jaffe and Robert A. Lipstein) for NSK-RHP Europe Ltd., RHP Bearings Ltd. and NSK Bearings Europe Ltd., plaintiffs.

Steptoe & Johnson LLP (Herbert C. Shelley) for SKF USA Inc., SKF Industrie S.p.A., SKF France S.A., Sarma and SKF GmbH, plaintiffs.

Barnes, Richardson & Colburn (Donald J. Unger, Kazumune V. Kano, David G. Forgue and Shannon N. Rickard) for NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, NTN Bower Corporation, NTN Driveshaft Incorporated, NTN-BCA Corporation and NTN Corporation, plaintiffs.

Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP (Max F. Schutzman) for The Barden Corporation (U.K.) Limited, The Barden Corporation, FAG Italia S.p.A., FAG Kugelfischer Georg Schafer AG and FAG Bearings Corporation, plaintiff-intervenors.

Lyn M. Schlitt, General Counsel; James M. Lyons, Acting General Counsel, Office of the General Counsel, United States International Trade Commission (Mary Elizabeth Jones), for the United States, defendant.

Stewart and Stewart (Terence P. Stewart and Geert De Prest) for Timken U.S. Corporation, defendant-intervenor.

Dated: August 5, 2004

**OPINION**

**I.   Standard of Review**

The Court will uphold the agency's redetermination pursuant to the Court's remand unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (2000).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966) (citations omitted).

## II.  Background

On September 3, 2003, this Court issued an order directing the United States International Trade Commission ("ITC" or "Commission"), to: (1) "reconcile the error alleged by NMB with respect to NMB's sister company, if the Commission utilizes NMB's sister company in the Commission's cumulation determination"; (2) "explain how commodity-like the Commission deems [certain] antifriction bearings"; and (3) apply this Court's finding regarding the meaning of the term "likely" to the ITC's cumulation analysis and its determination regarding the effect of revoking the antidumping duty orders at issue. NMB Singapore Ltd. & Pelmec Indus. (PTE) Ltd. v. United States ("NMB Remand"), 27 CIT ___, ___, 288 F. Supp. 2d 1306, 1352 (2003).  The Commission submitted its views pursuant to NMB Remand on December 2, 2003, see Views of the Commission ("Remand Determination"), which involve the five-year

sunset review final determination entitled Certain Bearings From China, France, Germany, Hungary, Italy, Japan, Romania, Singapore, Sweden, and the United Kingdom ("Final Determination"), 65 Fed. Reg. 39,925 (June 28, 2000). The Commission found in the Remand Determination as it did in the Final Determination that, on a whole, "revocation of the antidumping duty orders on ball bearings from France, Germany, Italy, Japan, Singapore, and the United Kingdom would be likely to lead to the continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time." Remand Determination at 3. The Commission specified that the proper definition of the term "likely" was applied throughout its sunset review determination, and asserted that it was proper to cumulate the subject imports because: (1) "subject imports from all six countries would be likely to have a discernible adverse impact on the domestic industry if the [antidumping duty orders at issue] were revoked"; (2) "a reasonable overlap of competition between the subject imports and the domestic like product is likely to exist if the orders were revoked" and (3) no significant differences exist between the conditions of competition among the subject countries. Id. at 5-6. Moreover, the Commission reasserted its position that NMB's sister company should not be excluded from the domestic industry since the appropriate circumstances to warrant such exclusion do not exist. See id. at 7-8.

On January 16, 2004, plaintiffs, NMB Singapore Ltd. and Pelmec Industries (PTE) Ltd. (collectively "NMB") and NSK-RHP Europe Ltd., RHP Bearings Ltd. and NSK Bearings Europe Ltd. (collectively "NSK-RHP") filed comments to the Remand Determination with this Court. Comments were also submitted by defendant-intervenor, Timken U.S. Corporation ("Timken") on January 16, 2004. Rebuttal comments were submitted by NMB on February 2, 2004, and by NSK and Timken on February 9, 2004. The Commission also filed reply comments on the Remand Determination on February 9, 2004.

## III. Discussion

### A. Contentions of the Parties

#### 1. NSK-RHP's Contentions

Section 1675a(a)(7) of Title 19 of the United States Code states that for five-year reviews, the Commission "shall not cumulatively assess the volume and effects of imports of the subject merchandise in a case in which it determines that such imports are likely to have no discernable adverse impact on the domestic industry." According to NSK-RHP, the record demonstrates that subject imports from the United Kingdom are likely to have "no discernable adverse impact on the domestic industry" and, therefore, the Commission erred in cumulating subject imports. Comments on the Commission's Remand Determination ("NSK-RHP Comments") at 3 (emphasis omitted). NSK-RHP contends that the

Commission improperly based its conclusion that cumulation was necessary on the following factors: (1) the subject industries in France, Germany, Italy, Japan, Singapore and the United Kingdom were export-oriented; (2) "the industry in each country had available, unused production capacity; and [(3)] four of the six countries were among the top five nations in the world for total bearing production." Id. at 3-4.

NSK-RHP specifically argues that "the framework" for applying the mandatory part of 19 U.S.C. § 1675a(a)(7), that is not cumulating subject imports upon a finding of no discernable impact, "was set by the Commission when it declined to cumulate [ball bearing] imports from Romania and Sweden. Like the [subject industry in the United Kingdom,] the Commission found that both the Romanian and Swedish [ball bearing] industries were export-oriented." Id. at 5. The Commission based its no discernable impact finding for Romania and Sweden on three factors. First, exports to the domestic market accounted for a small percentage of all Romanian and Swedish shipments. See id. Second, Romania and Sweden's capacity utilization rate is very low, "which apparently offset[s] concerns about available capacity." Id. Third, neither Romania nor Sweden are among the top five bearing producing nations. See id. NSK-RHP argues, therefore, that if the United Kingdom exhibits these same three "counterbalancing" factors, the

Commission should find it probable that the United Kingdom's subject imports would also have no discernable adverse impact on the domestic industry. See id. at 6.

NSK-RHP compares subject imports from the three countries and argues that the United Kingdom's bearing industry is less export-oriented than "the Swedish industry and sits in a position comparable to that of the Romanian [ball bearing] industry." Id. NSK-RHP notes that, with exception to 1997, exports from the United Kingdom to the United States accounted for a small percentage of total shipments. See id. at 7 (business proprietary version). Further, NSK-RHP points out that the United Kingdom, Sweden and Romania have comparable capacity utilization rates and that the size of the United Kingdom's ball bearing industry is relatively small when compared to the other countries involved in the original review. See id. at 8-9. NSK-RHP maintains that record evidence "which the Commission failed to consider, demonstrates that subject imports from the United Kingdom are likely to have no discernable adverse impact on the domestic industry." Id. at 9. Consequently, NSK-RHP requests that the Court re-remand the Final Determination with instructions to the Commission to explain how the record evidence was weighed relative to the "likely" standard regarding the agency's decision to cumulate imports from the United Kingdom. See id. at 11.

Finally, NSK-RHP argues that the Commission erred in not re-opening the record on remand to collect additional evidence regarding whether revocation of the subject orders would likely lead to continuation or recurrence of material injury. See id. at 12. According to NSK-RHP, "like the section involving cumulation, [the continuation or recurrence of material injury section of the Remand Determination] contains no analysis that logically bridges the 'likely' standard that the Commission says it applied to the Commission's subsequent conclusion." Id.

### 2.    NMB's Contentions

NMB argues that the Commission did not properly explain its findings regarding cumulation of imports from Singapore using the appropriate likely standard. See Comments of NMB on Views of the Commission on Remand ("NMB's Comments") at 6. Specifically, NMB contends that the Commission did not cite any additional evidence to support its finding in light of the Court's interpretation of the term "likely." See id. According to NMB, the evidence cited by the Commission was not sufficient to support a finding that imports from Singapore would probably compete with domestic like products if the subject order were revoked. See id. Moreover, the Commission ignored certain relevant evidence on channels of distribution, price competition and purchaser perceptions that could have influenced a finding of lack of interchangeability. See

id. at 16-17.

NMB specifically attacks Vice Chairman Hillman's revised conclusion upon remand that competition among domestic and Singapore bearings would be likely. NMB claims that Vice Chairman Hillman does not base her new determination on "the substantial evidence necessary to satisfy the Court's [likely] requirement." Id. at 18. NMB further argues that the Commission's conclusion that ball bearings are more commodity-like than other antifriction bearings is unsupported by substantial evidence, and urges the Court to reverse the Commission's determination. See id. at 30-31, 37.

### 3.   Timken's Contentions

Timken argues that the Court should uphold the Commission's Remand Determination since it complied with the Court's instructions in NMB Remand. The Remand Determination is supported by substantial evidence, which consists of "statements by various parties (including parties opposing the orders) during the review, studies, prior Commission determinations, and information collected from purchasers and importers during the sunset reviews." Remand Comments of Timken at 4.

With respect to the arguments raised by NMB, Timken maintains that a colloquy between Commissioner Bragg and Mr. Malstrom, president and CEO of SKF USA, Inc., reveals that ball bearings are

the most commodity-like of bearing types. <u>See</u> <u>id.</u> at 7-8.  Mr.

Malstrom's assessment also agrees with evidence the Commission

collected in its prior injury investigations. <u>See</u> <u>id.</u> at 6-10.

The Commission did not rely on erroneous information to determine

that there existed a reasonable overlap of competition between

imports from Singapore and other subject countries. <u>See</u> <u>id.</u> at 7.

> Instead the Commissioners relied, <u>inter alia</u>, on[: (1)]
> their previous finding of  reasonable overlap of
> competition (in the original investigation)[; (2)] the
> commodity-like nature of the subject imports[; (3)] the
> reports of purchasers that Singapore imports were
> interchangeable with the domestic product[; (4)] the
> presence of the imports in the same distribution
> channels[; and (5)] the presence of the imports
> throughout the United States."

<u>Id.</u>  Nevertheless, the Commission reopened the investigation upon

remand and Timken alone produced new information which, in

combination with the original evidence, overwhelmingly supports the

Commission's determination that reasonable overlap of competition

with imports from Singapore is likely. <u>See</u> <u>id.</u> at 10.

Finally, Timken urges the Court to dismiss the remaining

arguments raised by NMB and NSK-RHP since either the pertinent

issues have already been decided or because no viable arguments

remain in light of explanations provided in the <u>Remand</u>

<u>Determination</u> and newly collected record evidence. <u>See</u> <u>id.</u> at 11-

15.

**B.    Analysis**

Pursuant to the applicable standard of review, this Court must uphold an agency determination so long as it is supported by substantial evidence.  See 19 U.S.C. § 1516a(b)(1)(B)(i).  This case was remanded to the Commission with specific instruction to apply the proper meaning of the term "likely" to the ITC's cumulation analysis and determination regarding the effect of revocation.  In the Remand Determination, the Commission explained that for purposes of the agency's findings, the term "likely" means probable.  See Remand Determination at 5.  The Commission also reasserted its original findings regarding cumulation and adverse impact and further clarified that "[n]o Commissioner relied on . . . erroneous information [regarding NMB's sister company] in finding that a reasonable overlap of competition would be likely upon revocation."  Id. at 6.  Moreover, the Commission reconsidered and adopted its original findings regarding the conditions of competition and explained why ball bearings are more commodity-like than other types of bearings.  For the reasons set forth below, the Court affirms the Commission's Remand Determination.

> **1.    The Commission's Conclusion that Ball Bearings Are More Commodity-Like than Other Bearings is Supported By Substantial Evidence**

NMB complains that the Commission's conclusion regarding the commodity-like nature of ball bearings was unsupported by

substantial evidence. The Court, however, disagrees. The conclusions drawn by the Commission from the testimony between Commissioner Bragg and Mr. Malstrom were reasonable. The testimony reveals that deep groove ball bearings are the most commodity-like bearing type in the industry. See Def. Commission's Reply Comments on the Remand Determination ("Def.'s Reply") at 21. Tapered roller bearings are the second most commodity-like. See id. The Remand Determination revealed that the Commission considered factors, including quality and delivery dependability, which weighed against considering ball bearings commodities in its determination. However, the Commission also found that purchasers "perceived a significant degree of substitutability between domestically produced ball bearings and subject imports. . . . This substitutability indicated that multiple producers were able to meet purchasers' non-price concerns, such as engineering support, leaving price as the primary remaining area for competition." Def.'s Reply at 22; see Remand Determination at 10-11. The Commission properly weighed all of the evidence and the explanation provided in the Remand Determination pertaining to how commodity-like the agency deems ball bearings complies with the instructions in NMB Remand.

> 2. **The Commission Properly Cumulated Ball Bearings from the United Kingdom and Singapore and Determined that Such Imports Are Likely to Lead to the Continuation of Material Injury in Case of Revocation**

NSK-RHP and NMB argue that the Commission erred in cumulating certain countries. The arguments advanced by both parties, however, rely on unpersuasive evidence. NSK-RHP and NMB attempt to draw similarities between the ball bearing industries in Romania and Sweden and the United Kingdom and Singapore and argue that since subject imports from the former two countries were not cumulated, the Commission should similarly not cumulate subject imports from the later two countries. However, both complainants overlook two important factors; the major disparity in size between the subject industries and the differing degrees of penetration to the domestic market that Romania and Sweden have on the one hand, and that the United Kingdom and Singapore sustain on the other.

NSK-RHP specifically argues that the industry in the United Kingdom was similar to those in Romania and Sweden. However, NSK-RHP makes no mention of the significant differences in production capacity or volume between the United Kingdom and the other two countries. NSK-RHP further fails to consider that "unused production capacity in the United Kingdom in 1998 was significantly larger than the entire production capacity in Sweden," and that "subject imports from the United Kingdom [and] Singapore had a

significant advantage over imports from Romania, given that no subject imports from Romania were pre-certified for sales to [original equipment manufacturers.]"  Def.'s Reply at 8, 9.

NMB similarly argues that subject imports from Singapore were similar to those of Sweden and Romania since exports to the domestic market accounted for a small percentage of all Romanian and Swedish shipments.  NMB fails to disclose, however, the major difference in the volume of imports between these three countries. Simply put, "[s]ubject imports from Singapore dwarfed those from Romania and Sweden. . . . Similarly, the scale of the ball bearing industry in Singapore, and its unused capacity, dwarfed those in Romania and Sweden."  Id. at 6-7.

The Court finds that the Commission's Remand Determination complied with the Court's instructions in NMB Remand with respect to the cumulation issue.  In the Remand Determination, the ITC explains that it considered Singapore's ability and motivation to compete in the United States market a factor in it decision to cumulate subject imports from Singapore.  According to the ITC,

> [t]he evidence on the record . . . indicated significant differences between subject imports from Singapore and those from Romania and Sweden.  The [United States] market was far more important to the industry in Singapore than to the other two, and subject imports from Singapore were in a better position to compete in the [United States] market than were those from Romania. Given its continued significant position in the [United States] market and the importance of the [United States]

> market to NMB, subject imports from Singapore were likely
> to have a discernable adverse impact on the [domestic]
> market, while those from Romania and Sweden were not.

Def.'s Reply at 7-8.    The Commission also explained that in 1998,

the ball bearing industry in the United Kingdom was significantly

larger than those in Romania or Sweden.  See id. at 8.  "The volume

of subject imports from the United Kingdom was also significantly

higher . . . [while t]he unused production capacity  . . . was

significantly  larger  than  the  entire  producti[on]  capacity  in

Sweden."   Id.  at 8-9.   Moreover,  the  Commission  explained  why

subject  imports  from  the  United  Kingdom  had  a  "significant

advantage over imports from Romania."  Id. at 9.   The Commission

dispelled  of  NSK-RHP's  arguments  regarding  discernable  adverse

impact.   The Commission explained that it

> found that ball bearings were more commodity-like than
> other  bearings  and  that  a  significant  degree  of
> fungibility  existed  among  the  various  ball  bearings,
> indicating  that  most  producers  could  supply  most
> purchasers' non-price requirements, leaving price as the
> primary area for competition.  The Commission also found
> that demand for ball bearings was relatively inelastic,
> and that a decline in price would have little effect on
> demand.

Id. at 10.


The Commission sufficiently addressed the arguments raised by

NMB with respect to Vice Chairman Hillman's ultimate decision to

cumulate in the Remand Determination.  The Commission admitted that

the record was reopened since an error was committed in the staff

report, and invited the parties to present new information to the agency.  Timken was the only party to present additional information, and upon a new review of the record, the ITC determined and the Court agrees that "a reasonable overlap of competition is likely based on the evidence of purchasers regarding the degree of interchangeability between subject imports and the domestic like product and the presence of the domestic like product and subject imports in similar channels of distribution." Id. at 7-8.  The Court also agrees with the Commission that Vice Chairman Hillman's decision to cumulate was based on the additional evidence gathered during remand pertaining to fungibility.  See Remand Determination at 7 n.24.  Accordingly, the Court finds that these explanations sufficiently resolve the question of the Commission's interpretation of the term "likely" with respect to cumulation.

The Commission also clarified that it applied the term "likely" with regards to its determination that revocation would likely lead to continuation or recurrence of injury in accordance with the Court's instruction and consistent with a prior determination that was affirmed by Usinor Industeel, S.A. v. United States, Slip Op. 02-152, 26 CIT ___, ___ (Dec. 20, 2002).  See Remand Determination at 13.  That is, it found that "likely" means "probable." See id.  The Commission adopted its original findings on the likely volume, price effects and impact and found that

revocation of the subject orders would likely lead to continuation or recurrence of material injury.  The Court is satisfied that the Commission fully complied with its instructions in <u>NMB Remand</u> and, accordingly, affirms the Commission's determination that revocation of the antidumping duty orders on subject imports from France, Germany, Italy, Japan, Singapore and the United Kingdom would likely lead to continuation or recurrence of material injury to a domestic industry within a reasonably foreseeable time.

### C.    Conclusion

Upon review of the record, and the arguments presented by the parties on remand, the Court finds that the <u>Remand Determination</u> is supported by substantial evidence on the record and in accordance with law.  Accordingly, it is hereby

**ORDERED** that the <u>Remand Determination</u> is affirmed in all respects; and it is further

**ORDERED** that since all other issues have been decided, this case is dismissed.


                                      /s/ Nicholas Tsoucalas
                                     NICHOLAS TSOUCALAS
                                       SENIOR JUDGE


Dated:    August 5, 2004
          New York, New York