Slip Op. 08-69

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

| | |
|---|---|
| PS CHEZ SIDNEY, L.L.C., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| UNITED STATES INTERNATIONAL | : |
| TRADE COMMISSION, and | : |
| UNITED STATES CUSTOMS | : |
| SERVICE, | :  Before:  WALLACH, Judge |
| | :  Court No.:  02-00635 |
| Defendants, | : |
| | : |
| and | : |
| | : |
| CRAWFISH PROCESSORS | : |
| ALLIANCE, et al., | : |
| | : |
| Defendant-Intervenors. | : |

_____:

[United States International Trade Commission's Remand Determination is AFFIRMED; United States Customs and Border Protection's Remand Determination is AFFIRMED; Plaintiff PS Chez Sidney, L.L.C.'s Motion for Entry of Money Judgment Pursuant to 28 U.S.C. § 2643(a)(1) is DENIED.]

                                Dated:        June 17, 2008

William E. Brown and Arnold & Porter (Michael T. Shor) for Plaintiff PS Chez Sidney, L.L.C.

Gregory G. Katsas, Acting Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Franklin E. White); and Andrew G. Jones, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of Counsel, for Defendant United States Customs and Border Protection.

Neal J. Reynolds, Assistant General Counsel, Office of the General Counsel, United States International Trade Commission (Patrick V. Gallagher), for Defendant United States International Trade Commission.

Adduci, Mastriani & Schaumberg, LLP (Will E. Leonard), for Defendant-Intervenors Crawfish Processors Alliance; Bob Odom, Commissioner, Louisiana Department of Agriculture and Forestry; Louisiana Department of Agriculture and Forestry.

Sonnenschein Nath & Rosenthal (Michael A. Bamberger) for INA USA Corporation, appearing amicus curiae in support of Plaintiff.

Arnold & Porter, LLP (Michael T. Shor and Claire E. Reade), for Giorgio Foods Inc., appearing amicus curiae in support of Plaintiff.

Kelley Drye & Warren (David A. Hartquist) and Stewart and Stewart (P. Stewart) for Committee to Support U.S. Trade Laws, appearing amicus curiae in support of Plaintiff.

## OPINION

**Wallach, Judge:**

## I

## INTRODUCTION

This matter comes before the court following its remand to Defendants United States International Trade Commission (the "Commission") and United States Customs and Border Protection ("Customs"), respectively. In the underlying action, the court held that the support requirement of the Continued Dumping and Subsidy Offset Act of 2000 (the "CDSOA" or the "Byrd Amendment") was unconstitutional and severed that requirement from the statute. The court remanded to the Commission and Customs to determine Plaintiff PS Chez Sidney, L.L.C.'s ("Chez Sidney") eligibility for CDSOA distributions under the modified version of the statute, and to determine how Chez Sidney would receive those distributions for which it is eligible.

On remand, the Commission determined that Chez Sidney qualified for inclusion on the list of producers eligible for CDSOA distributions, and Customs determined that Chez Sidney was eligible for such distributions in fiscal year ("FY") 2002 and FY 2003. Chez Sidney

2

contests Customs' decision not to furnish payment on the FY 2002 and FY 2003 CDSOA distributions until all appeals in this action have been exhausted; Chez Sidney also challenges Customs' determination that it is ineligible for FY 2004 CDSOA distributions.

This court has jurisdiction pursuant to 28 U.S.C. § 1581(i). For the reasons set forth below, Customs' Remand Determination is affirmed.

## II

### BACKGROUND

Chez Sidney initiated this action to challenge the requirement that a domestic producer support an antidumping petition in order to be eligible for CDSOA distributions. The court held that the support requirement of the CDSOA was unconstitutional because it violated the First Amendment protections of freedom of speech and freedom of expression. PS Chez Sidney, L.L.C. v. United States, 442 F. Supp. 2d 1329, 1358-59 (CIT 2006) ("PS Chez Sidney I"); cf. SKF USA Inc. v. United States, 451 F. Supp. 2d 1355 (CIT 2006) (holding that the support requirement of the CDSOA was unconstitutional on Equal Protection grounds); Canadian Lumber Trade Alliance v. United States, 425 F. Supp. 2d 1321 (CIT 2006), aff'd in relevant part, 517 F.3d 1319 (Fed. Cir. 2008) (holding that the NAFTA Implementation Act rendered the CDSOA inapplicable to goods from Canada and Mexico). In a subsequent decision, the court held that it was appropriate to sever the unconstitutional support requirement. PS Chez Sidney, L.L.C. v. United States, 502 F. Supp. 2d 1318, 1323-24 (CIT 2007) ("PS Chez Sidney II"); accord SFK, 415 F. Supp. 2d at 1365.

After striking this requirement, the court found that "all 'affected domestic producers' who are either petitioners or interested parties in an antidumping petition are eligible to be

3

included on the [Commission's] list for CDSOA distributions." Id. at 1324; accord SKF, 451 F. Supp. 2d at 1365-66. The court remanded the matter to the Commission and Customs. The Commission was instructed to determine whether, under the modified version of the CDSOA, Chez Sidney otherwise met the requirements to qualify as an "affected domestic producer." Id. at 1324. If the Commission determined that Chez Sidney qualified as an "affected domestic producer," then Customs was directed to (1) assess the sufficiency of Chez Sidney's claim, (2) include Chez Sidney on the list of producers eligible for CDSOA distributions for FY 2002, if appropriate, and (3) "determine how Chez Sidney shall receive its pro rata share, if any, of the 2002 CDSOA disbursements." Id. at 1324-25. The court also ordered the Commission and Customs to make such determinations for each subsequent year in which Chez Sidney applied for CDSOA distributions. Id.

The Commission determined on remand that, under the modified version of the Byrd Amendment, Chez Sidney met the requirements to be included on the list of "affected domestic producers" eligible for CDSOA distributions. Letter from Neal J. Reynolds, Assistant General Counsel for Litigation, United States International Trade Commission to Tina Potuto Kimble, Clerk of the Court, United States Court of International Trade (November 27, 2007) ("Commission's Remand Determination"). That determination did not elicit comments from Chez Sidney and is hereby affirmed.

Subsequently, Customs determined that Chez Sidney is eligible for a pro rata share of the FY 2002 and FY 2003 CDSOA distributions "to the extent these funds are either recoverable from the affected domestic producers who initially received them or are available in the Special Account." Reconsideration of the Fiscal Year 2002, 2003, and 2004 CDSOA Certifications of PS

4

Chez Sidney, L.L.C. (February 5, 2008) ("Customs' Remand Determination") at 3.  Customs indicated, however, that Chez Sidney will not receive payment until "all opportunities for rehearing and/or appeal have been exhausted." Id. at 2.  In addition, Customs stated its intention to verify the qualifying expenditures for which Chez Sidney seeks CDSOA disbursements in FY 2002 and FY 2003 "in a manner consistent with 19 C.F.R. § 159.63(d)." Id. at 3.  Chez Sidney's request for FY 2004 CDSOA distributions was denied on the ground that it had ceased production in 2003. Id. at 2.

Chez Sidney contests Customs' Remand Determination on three principal grounds.  First, Chez Sidney argues that that Customs' proposed remedy is inadequate. Plaintiff PS Chez Sidney, L.L.C.'s Comments on February 5, 2008 Remand Determination by United States Customs and Border Protection ("Plaintiff's Comments") at 1-2.  Second, Chez Sidney argues that it is entitled to both pre- and post-judgment interest on its pro rata shares of the FY 2002 and FY 2003 distributions. Id. at 10.  Third, Chez Sidney asserts that it is entitled to post-FY 2003 CDSOA distributions. Id. at 11.  Chez Sidney requests that the court direct Customs to either furnish payment on its pro rata shares of the FY 2002 and FY 2003 CDSOA distributions immediately or reserve funds in the Special Account for such distribution. Id. at 2.

### III

### STANDARD OF REVIEW

Remand determinations are reviewed "for compliance with the court's remand order." Dorbest Ltd. v. United States, No. 05-00003, 2008 Ct. Int'l Trade LEXIS 22, at *3 (February 27, 2008) (citing NMB Sing. Ltd. v. United States, 28 CIT 1252, 341 F. Supp. 2d 1327 (2004)).  Because jurisdiction over this action is derived from 28 U.S.C. § 1581(i), the applicable standard

of review is as established in Section 706 of the Administrative Procedure Act ("APA"). 28 U.S.C. § 2640(e).

**IV**

**ANALYSIS**

**A**

**Customs' Remand Determination Fully Complies with the Court's Remand Instructions and Can Not be Characterized as Arbitrary and Capricious**

**1**
**Customs' Proposed Remedy is Adequate**

Chez Sidney contends that the remedy proposed in Customs' Remand Determination contradicts the court's directive that Customs determine how Chez Sidney "shall receive its pro rata share" of the CDSOA funds for which it is eligible. Plaintiff's Comments at 2 (citing PS Chez Sidney II, 502 F. Supp. 2d at 1324-25). In support of this contention, Chez Sidney weighs the perceived risks of not receiving payment from Customs until disposition of the case on appeal, id. at 4-6, and ultimately concludes that an order directing "immediate distribution of funds in the Special Account . . . maximizes Chez Sidney's recovery . . . and complies with the letter and the spirit of the [c]ourt's opinion and judgment," id. at 7.

Customs has explained that Federal regulations contemplate the possibility that CDSOA disbursements may need to be redistributed and provide a "deliberative and orderly" mechanism for doing so. Defendant United States Customs and Border Protection's Response to Plaintiff PS Chez Sidney, L.L.C.'s Comments on February 5, 2008 Remand Determination ("Customs' Response") at 7 (citing 19 CFR § 159.64(b)(3)). Chez Sidney objects to this process established by federal legislation on the bases that full recovery from the domestic crawfish producers "will

6

be impossible," Plaintiff's Comments at 4-5, and that the "Special Account will be empty," id. at 5.

The court specifically authorized Customs not only to determine Chez Sidney's eligibility for CDSOA distributions, but also to establish the mechanism by which Chez Sidney would receive such funds. PS Chez Sidney II, 502 F. Supp. 2d at 1325 ("Customs is directed to determine how Chez Sidney shall receive its pro rata share, if any, of the 2002 CDSOA disbursements."). Accordingly, Customs' decision to verify the amounts submitted by Chez Sidney as qualifying expenditures, wait until all appeals are exhausted in this case before furnishing payment to Chez Sidney, and follow its internal administrative process to secure the funds with which to do so is neither inconsistent with the court's remand instructions nor arbitrary and capricious.

**2**
**Chez Sidney is Not Entitled to Pre- or Post-Judgment Interest on the FY 2002 and FY 2003 CDSOA Distributions**

Chez Sidney claims that it "should be entitled to prejudgment and post-judgment interest" on its pro rata shares of the FY 2002 and FY 2003 CDSOA distributions. Plaintiff's Comments at 10.

These claims fail as a matter of law. It is a long-standing principle of U.S. jurisprudence that, in the absence of a constitutional requirement, interest can be recovered against the United States only if Congress has expressly consented to such recovery. United States v. N.Y. Rayon Importing Co., 329 U.S. 654, 658-59, 67 S. Ct. 601, 91 L. Ed. 577 (1947). This limitation, which is commonly referred to as the no-interest rule, "must be strictly construed." Id. at 659. Indeed, the rule of sovereign immunity requires that Congressional "consent to liability for

7

interest on a damage award . . . be 'affirmatively and separately contemplated' . . . from a general waiver of immunity for the cause of action resulting in the damages award against the United States." <u>Marathon Oil Co. v. United States</u>, 374 F.3d 1123, 1126-27 (Fed. Cir. 2004) (quoting <u>Library of Congress v. Shaw</u>, 478 U.S. 310, 314-15, 106 S. Ct. 2957, 92 L. Ed. 2d 250 (1986)). The no-interest rule applies to claims for both pre- and post-judgment interest. <u>Id.</u> (citing <u>N.Y. Rayon</u>, 329 U.S. at 661).

According to Plaintiff, the rule does not apply in this case because the funds in the Special Account do not belong to the United States. Plaintiff's Comments at 10. That fact has no effect, however, on the applicability of the no-interest rule in this case. Indeed, "the *sine qua non* of federal sovereign immunity is the federal government's *possession* of the money in question. The government need not have an actual interest in the funds in order to invoke the defense." <u>Kalodner v. Abraham</u>, 310 F.3d 767, 769-70 (D.C. Cir. 2002) (citing <u>N.Y. Rayon</u>, 329 U.S. 654).

Therefore, because there is neither a constitutional requirement nor evidence of explicit Congressional intent to authorize the payment of interest on CDSOA disbursements, Plaintiff's claims for both pre- and post-judgment interest on funds held by the United States must fail.

**3**
## <u>Chez Sidney is Not Entitled to CDSOA Distributions in FY 2004 Because it Ceased Operations in 2003</u>

Chez Sidney argues that, notwithstanding the fact that it ceased operations in 2003-2004, it is entitled to CDSOA distributions based on the additional qualifying expenditures it would have submitted in the years after 2003. Plaintiff's Comments at 12-13. According to Chez Sidney, the cessation of its operations in 2003-2004 was a direct result of its inability to collect

the CDSOA distributions to which it would have been entitled in previous years in the absence of the support requirement ultimately found unconstitutional by this court in PS Chez Sidney I. Id. at 11-12. On this basis, Chez Sidney asserts that it is entitled to its pro rata share of post-FY 2003 distributions based on the same percentages of qualifying expenditures that it submitted in FY 2002 and FY 2003. Id. at 12-13.

Nothing in the court's remand instructions in PS Chez Sidney II can be read to require Customs to make CDSOA distributions to Plaintiff for FY 2004 or any other year for which it was not in operation. Customs was directed to determine whether Plaintiff is entitled to such distributions after 2002; beyond striking the unconstitutional support provision from the CDSOA, the court did not direct or otherwise constrain Customs' determinative process. The Byrd Amendment specifically excludes companies that have ceased production of the product covered by the antidumping duty order in question from the definition of "affected domestic producer" eligible for CDSOA distributions. 19 U.S.C. § 1675c(b)(1)(B) (2000). Thus, because Chez Sidney was not "in operation" after 2003, it is statutorily ineligible for CDSOA distributions in later years. Id. at 14-15.

## C

### Chez Sidney's Request That the Court, In Effect, Issue a Writ of Mandamus is Inappropriate in These Circumstances

Chez Sidney's requested relief requires the court to take the specific step of ordering Customs to either immediately furnish payment on Chez Sidney's pro rata shares of the FY 2002 and FY 2003 CDSOA distributions or to "hold and preserve sufficient funds already in and to be deposited in the Special Account so that funds will be available" to do so. Plaintiff's Comments at 13-14. This is effectively a request that the court issue a writ of mandamus, and will be

9

evaluated accordingly.

The common-law writ of mandamus, as codified in 28 U.S.C. § 1361 and 28 U.S.C. § 1651(a), is a "drastic [remedy], to be invoked only in extraordinary situations." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34, 101 S. Ct. 188, 66 L. Ed. 2d 193 (1980). It is "one of 'the most potent weapons in the judicial arsenal.'" Cheney v. U.S. Dist. Court, 542 U.S. 367, 380, 124 S. Ct. 2576, 159 L. Ed. 2d 459 (2004) (quoting Kerr v. United States Dist. Court for N. Dist., 426 U.S. 394, 403, 96 S. Ct. 2119, 48 L. Ed. 2d 725 (1976)). Thus, before the court can issue a writ of mandamus, it must ensure that the party seeking the writ makes three required showings. First, the party must demonstrate that it has "no other adequate means" to attain the desired relief. Id. (quoting Kerr, 426 U.S. at 403). Second, the party must demonstrate that its right to obtain the writ is "clear and indisputable," id. at 381 (quoting Kerr, 426 U.S. at 403) – in other words, the party must demonstrate that he or she is owed a "clear nondiscretionary duty," Heckler v. Ringer, 466 U.S. 602, 616, 104 S. Ct. 2013, 80 L. Ed. 2d 622 (1984). Finally, even after making the first two required showings, the party must demonstrate that a writ of mandamus is "appropriate under the circumstances." Cheney, 542 U.S. at 381.

Chez Sidney has not made the three required showings. There is an alternative means for it to attain the relief it seeks; that alternative is to allow Customs to follow its internal administrative process to obtain the funds with which to render payment on Chez Sidney's pro rata shares of the FY 2002 and FY 2003 CDSOA distributions. While the court's decision in PS Chez Sidney II, 502 F. Supp. 2d 1318, establishes Chez Sidney's right to those funds, Customs has not given this court any reason to believe that it will not follow through with payment. Therefore, a writ of mandamus is not appropriate in these circumstances.

10

**V**

**CONCLUSION**

For the above stated reasons, the Commission's Remand Determination is Affirmed,

Customs' Remand Determination is Affirmed, and Chez Sidney's Motion for Entry of Money

Judgment Pursuant to 28 U.S.C. § 2643(a)(1), filed on April 10, 2008, is Denied.


_/s/ Evan J. Wallach_____
Evan J. Wallach, Judge

Dated:       June 17, 2008
New York, New York

11