Slip-Op. 09-2

UNITED STATES COURT OF INTERNATIONAL TRADE

```
- - - - - - - - - - - - - - - - -- -x
DORBEST LTD.; RUI FENG WOODWORK   :
(DONGGUAN) CO. LTD.; RUI FENG     :
LUMBER DEV. (SHENZHEN) CO. LTD.,  :
                                  :
              and                 :
                                  :
AM. FURNITURE MFRS. COMM. FOR     :
LEGAL TRADE; VAUGHAN-BASSETT      :
FURNITURE CO. INC.; CABINET       :
MAKERS, MILLMEN, & INDUS.         :
CARPENTERS LOCAL 721; UBC S.      :
COUNCIL OF INDUS. WORKERS LOCAL   :
2305; UNITED STEEL WORKERS OF AM. :
LOCAL 193U; CARPENTERS INDUS.     :
UNION LOCAL 2093; TEAMSTERS,      :
CHAUFFEURS,WAREHOUSEMEN & HELPERS :
LOCAL 991; IUE INDUS. DIV. OF CWA :
LOCAL 82472                       :
                                  :
      Plaintiffs/Defendant-       :
              Intervenors,        :
                                  :
              v.                  : Before: Pogue, Judge
                                  : Consol. Ct. No. 05-00003
UNITED STATES,                    :
                                  :
              Defendant,          :
                                  :
DONGGUAN LUNG DONG/DON HE         :
ART HERITAGE INT'L, LTD/SUPER ART :
FURNITURE CO./ARTOWRK METAL &     :
PLASTIC CO./JIBSON INDUS. LTD./   :
ALWAYS LOYAL INT'L; FORTUNE GLORY :
LTD. (HK LTD.)/ NANHAI JIANTAI    :
WOODWORK CO.; FINE FURNITURE      :
(SHANGHAI) LTD.; COASTER CO. OF   :
AM.; COLLEZIONE EUROPA, USA,      :
INC.; FINE FURNITURE DESIGN &     :
MKTG. LLC; GLOBAL FURNITURE, INC.,:
HILLSDALE FURNITURE, LLC;         :
KLAUSSNER INT'L, LLC; MAGNUSSEN   :
HOME FURNISHINGS INC.;            :
L. POWELL CO.; RIVERSEDGE         :
FURNITURE CO.; WOODSTUFF MFG.     :
INC., D/B/A SAMUEL LAWRENCE;      :
SCHNADIG    CORP.; GOOD COS.;     :
STANDARD FURNITURE MFG. CO.       :
                                  :
        Defendant-Intervenors.    :
- - - - - - - - - - - - - - - - ----x
```

[Commerce's remand determination sustained].

Troutman Sanders LLP (Jeffrey S. Grimson, Donald B. Cameron, Julie C. Mendoza, R. Will Planert, Brady W. Mills, Mary S. Hodgins) for Dorbest Limited et al.;

King & Spalding, LLP (Joseph W. Dorn, Stephen A. Jones, Jeffrey M. Telep, J. Michael Taylor, Elizabeth E. Duall) for the American Furniture Manufacturers Committee for Legal Trade et al.;

Gregory G. Katsas, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Brian A. Mizoguchi); Rachel E. Wenthold, Senior Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, for the United States Department of Commerce;

Mowry International Group, LLC (Jill Cramer and Kristin H. Mowry) and Howe & Russell, PC (Kevin Russell) on behalf of Art Heritage International, Limited et al.; and

Trade Pacific, PLLC (Robert G. Gosselink) on behalf of Dongguan Lung Dong/Dong He et al.

Decided: January 7, 2009

POGUE, Judge: This matter returns to court after a second partial remand following the court's most recent decision, Dorbest Ltd. v. United States, 547 F. Supp. 2d 1321 (CIT 2008) ("Dorbest II"). Dorbest II remanded the matter to the Department of Commerce ("Commerce") so that it could: (1) determine the correct heading of the Harmonized Tariff Schedule of India ("HTS[I]") for the valuation of Dorbest's cardboard input, id. at 1337, (2) provide adequate support or explanation for its selection of surrogate companies for use in the calculation of SG&A financial ratios, id. at 1344, (3) explain its reasoning in calculating offsets to SG&A and interest expenses with short-term interest income earned on working capital accounts or current assets, id. at 1347-8, and (4)

calculate the separate rate for non-mandatory respondents without creating or using data known to be invalid, id. at 1351. Also before the court is Petitioner AFMC's contention that Commerce must correct a ministerial error with respect to the valuation of rubberwood.

**STANDARD OF REVIEW**

The court reviews remand determinations for compliance with the court's remand order. See NMB Sing. Ltd. v. United States, 28 CIT 1252, 1259-60, 341 F. Supp. 2d 1327, 1333-34 (2004) (affirming International Trade Commission's determinations on remand where the determinations were in accordance with law, supported by substantial evidence, and otherwise satisfied the remand order); see also Olympia Indus., Inc. v. United States, 23 CIT 80, 82-83, 36 F. Supp. 2d 414, 416 (1999) (affirming after "review[ing] Commerce's compliance with these instructions in its Remand Results" and finding the determination to be supported by substantial evidence and in accordance with law). In addition, any factual findings on remand must be supported by substantial evidence and the agency's legal determinations must be in accordance with law. 19 U.S.C. § 1516a(b)(1)(B); see, e.g., Huaiyin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003); AG der Dillinger Huttenwerke v. United States, 28 CIT 94, 95, 310 F. Supp. 2d 1347, 1349 (2004) (holding remand determination to legal and factual standards set out in 19 U.S.C.

§ 1516a(b)(1)(B)).


**DISCUSSION**

The court considers each issue in turn:

1. Valuation of Cardboard

Dorbest II granted Commerce's request for a voluntary remand to "determine under which subheading Dorbest's [cardboard] input would properly be classified," and further directed Commerce to "determine whether the data put forth by Dorbest regarding distortion to data in subheading 4808.1000 necessitates alteration of the data used or the selection of a different subheading." Dorbest II, 547 F. Supp. 2d at 1338.

On remand, Commerce determined that HTS[I] subheading 4808.1000 provided the better classification for Dorbest's cardboard input. Final Results of Redetermination Pursuant to Court Remand, Dorbest Ltd.; Rui Feng Woodwork (Dongquan) Co. Ltd.; Rui Feng Lumber Dev. (Shenzhen) Co. Ltd. v. United States, Consol. Court No. 05-00003 July 15, 2008) ("Final Results") at 4. In support of this determination, Commerce compared Dorbest's own description of its input with the subheadings at issue, noting that Dorbest described its cardboard input as "paper cardboard." Id. at 4 (quoting Dorbest Response to HTS Request, Attachment 1, May 26, 2004, P.R. 1152, fr.7).

HTS[I] heading 4808 covers "Paper and paperboard, corrugated

(with or without glued flat surface sheets), creped, crinkled, embossed or perforated, in rolls or sheets, other than paper of the kind described in 4803." Subheading 4808.1000 in turn covers "Corrugated paper and paperboard, whether or not perforated." Commerce also considered Subheading 4808.9000, which is a residual or basket category, "other", covering items not covered by the first three subheadings of heading 4808. Generally, such basket categories should be used only when no more specific category is appropriate. See Witex, U.S.A., Inc. v. United States, 28 CIT 1907, 1916-17 & n. 16, 353 F. Supp. 2d 1310, 1319 & n. 16 (2004). Furthermore, because Dorbest's own description of its product seems to fit under subsection 4808.1000, there is a good reason to favor this heading unless it is unreasonable, for some other reason, to do so.

Dorbest claims, however, that information from Infodrive India demonstrates that 4808.1000 is not an appropriate heading for two reasons. First, Dorbest claims that Infodrive data show that many items in 4808.1000 are "misclassified", and second, a large percentage of the items classified under 4808.1000 are finished cardboard boxes, a value-added product that differs from Dorbest's product.

In response, Commerce contends that the data from Infodrive are, at least in this case, unreliable, as they are significantly incomplete, because they do not cover or include at least 40% of

all imports classified under 4808.1000.  Furthermore because the information in Infodrive is presented in a large number of different units of measurement, many of which are incommensurable, Commerce contends that it is not able to use this data to check its otherwise reasonable determination to use subheading 4808.1000. Final Results at 5-6.

Dorbest's arguments on this point are essentially similar to those that the court previously rejected when made with regard to Dorbest's resin input.  Dorbest II, 547 F. Supp. 2d at 1333.  Here the court notes, once again, that when Commerce weighs or evaluates the evidence and chooses between imperfect alternatives, so long as its decision is supported by substantial evidence, the court must affirm.  As in the earlier decision regarding resin, here Commerce has evaluated the evidence and chosen between imperfect alternatives for valuing Dorbests' cardboard input. As there is substantial evidence supporting its decision, that decision is affirmed. See also, Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-52 (Fed.Cir.2006)(concluding that 'substantial evidence' connotes reasonableness review).

Dorbest also argues that Commerce's valuation of cardboard in its remand determination is unfair because other respondents received different values during the investigation.  This claim is without merit.  As no other parties contested the original value selected by Commerce, Commerce did not have occasion to reexamine

the cardboard valuations assigned to the other respondents. Therefore, because these other cardboard valuations were not at issue here, they were not part of the court's remand order to Commerce, and Commerce therefore had no duty to consider them.

2. SG&A Financial Ratios

In its initial remand to Commerce, Dorbest Ltd. v. United States, 30 CIT _, 462 F. Supp. 2d 1262 (2006)("Dorbest I"), the court noted that Commerce generally considers quality, specificity, contemporaneity and representativeness when judging the appropriateness of surrogate values for use in the calculation of financial ratios. Id. at 1301. The court emphasized "that Commerce must apply its selection criterion in a consistent and uniform manner, otherwise its selection could become arbitrary and capricious." Id.

In Dorbest II the court again remanded this issue with instructions to Commerce that it must support its conclusion that including data from four companies much smaller than Dorbest -- Fusion Design Private Ltd., DnD's Fine Furniture Ltd., Nizamuddin Furniture Ltd., and Swaran Furniture Ltd. -- did not distort the calculated financial ratios, given the apparent correlation between company size and financial ratios. Dorbest II, 547 F. Supp. 2d at 1343-44. Dorbest II specifically noted that "Commerce's determination to include SG&A ratios which it has determined are

'comparable' to those of companies of other sizes may be within the agency's discretion, if based on proper findings regarding the effect of including much smaller companies in its data set. Commerce's remand determination, however, does not contain such findings." Id. at 1343.

In its Final Results, Commerce again made no such findings. Instead, Commerce claims that their prior method of calculation, the one the court previously rejected, is sufficient, and that a more sophisticated approach is neither necessary nor, given the data Commerce has, possible. Final Results at 19. However, as Commerce correctly recognizes, merely repeating arguments that have already been rejected will not suffice. Because Commerce has chosen to add no new arguments or analysis, it has decided to exclude the companies in question from its calculation of SG&A ratios. Id. As both Dorbest and the court are satisfied with Commerce's decision to remove the companies in question -- even if not with Commerce's reasons -- the court now affirms Commerce's calculation of SG&A ratios.

3. Interest Income

In Dorbest II the court remanded to Commerce its consideration of interest income, directing it to "explain its reasoning and its factual determinations regarding the offset of SG&A expenses with short-term interest [for DnD and Raghbir]." Dorbest II, 547 F.

Supp. 2d at 1347-48. Because Commerce has now excluded DnD from its calculations of surrogate financial ratios, only the offset for Raghbir is at issue.

In its Final Results, Commerce explained its practice of allowing an offset to SG&A and interest expenses for short-term interest income earned on investments of working capital accounts, that is, current assets. Final Results at 25. See also Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review, 56 Fed. Reg. 31692, 31734 (Dep't Commerce July 11, 1991) (final determination). Commerce explained that, because it does not take long-term interest income to relate to current operations, it does not offset interest expense with interest income earned on long-term investments. Final Results at 26. Commerce further explained that, in cases arising from non-market economies that do not allow for a detailed analysis of the assets that generate interest income, it has established the practice of examining the assets on the balance sheet of the surrogate financial statement so as to determine the ratio or percentage of short term to total interest-bearing assets. Id. See also Notice of Final Results of Antidumping Duty Administrative Review and Final Partial Rescission: Certain Cut-to-Length Carbon Steel Plate from Romania, 72 Fed. Reg. 6522 (Dep't Commerce February 12, 2007) (final

determination).  This percentage is then applied to the interest income earned to give an approximation of the short-term portion of total interest income.  Final Results at 26.

However, in the present case Commerce did not need to use this method as, in its investigation of Raghbir's balance sheets, it found all of the interest-bearing assets of the company to be short-term in nature.  Final Results at 27.  Having presented evidence that all of Raghbir's interest-bearing assets are "current assets", and finding that there was no evidence of interest earned from long-term investments, Commerce concluded that any interest income earned by Raghbir must be short-term in nature.  Id. at 26-27.  Given this, Commerce concluded that it was appropriate to offset all of Raghbir's interest income against its interest expenses.  Id. at 28.  As these conclusions are supported by substantial evidence, and are furthermore not contested by any party, the court affirms Commerce's conclusion as to interest income.


4. Calculation of the Separate Rate

After the court's initial remand to Commerce in Dorbest I, Commerce adjusted Dorbest's margin as a result of Dorbest's and AFMC's court challenges.  Final Results at 28.  Because AFMC's complaint also addressed the margin applicable to other mandatory and non-mandatory (separate rate) respondents, Commerce also

calculated new rates for those companies. Id. at 28-29. However, in recalculating the separate rate on remand, Commerce took into account only the changes that resulted from AFMC's challenge and not those that resulted from Dorbest's challenge. As a result, when calculating the separate rate, Commerce used an invalid and fictitious rate of 8.52% for Dorbest, rather than the rate of 2.87% that Commerce actually assigned to Dorbest after remand. Id. at 29. As the separate rate is a weighted average of the rates assigned to mandatory respondents, using this invalid and fictitious rate resulted in a higher rate being assigned to the separate rate parties.

In Dorbest II, the court remanded this issue, noting that, while the separate rate companies (referred to collectively as "Art Heritage") were not entitled to the benefits of Dorbest's claim, because they were not parties to that action, Commerce also could not use or create data that it knew to be invalid when better data was easily available. Dorbest II, 547 F. Supp. 2d at 1351. See also D & L Supply Co. v. United States, 113 F.3d 1220, 1223 (Fed. Cir. 1997) (deciding, under the 1988 version of the antidumping law, that "[i]nformation that has conclusively been determined to be inaccurate does not qualify as the 'best information' under any test, and certainly cannot be said to serve the 'basic purpose' [of the statute] of promoting accuracy." ); F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed.

Cir. 2000)(affirming Court of International Trade's ruling that Commerce could not use a rate that had been "thoroughly discredited" by Commerce's own investigation). In the court's April 1 order, the court further clarified that Commerce could not use a rate which Commerce knew to be incorrect when better data was available. Dorbest Ltd. v. United States, No. 05-cv-00003 (CIT Apr. 1, 2008) (order granting defendant's motion for clarification).

While Commerce has agreed to follow the court's instructions and not use invalid, fictitious data in calculating the separate rate, the agency does so only "under protest", asserting, along with AFMC, that there is "no legal basis to alter the separate rate based on Dorbest's lawsuit." Final Results at 32. This claim shows two misunderstandings. First, the court has not ordered Commerce to change the separate rate "based on Dorbest's lawsuit", but rather on the basis of well established law that requires Commerce to use the best data available and not to use data it knows to be inaccurate. That Dorbest's action was the cause of Commerce's gaining this more accurate data does not make Dorbest's action the basis of the required change. Secondly, it is well established that the court may exercise its discretion upon remand to prevent the court from knowingly affirming a determination with errors. Maui Pineapple Co. v. U.S., 27 CIT 580, 603, 264 F. Supp. 2d 1244, 1264 (2003). Here, as in Maui Pineapple, the Art Heritage

companies are not entitled to the fruits of Dorbest's suit, but the court in turn is not required to affirm a determination it (and Commerce) knows to be mistaken.  For these reasons the court affirms Commerce's determination of the separate rate.

5. Rubberwood

Finally, the court considers Commerce's decision once again not to correct a ministerial error, with respect to rubberwood, on the grounds that the complaint asking for the change was filed in an untimely manner.  Final Results at 33.  The court has already dealt with this issue in its previous decision, noting that, while it is within Commerce's discretionary powers to correct this error, even when notified of it in an untimely manner, Commerce is not required to do so "given the length of time that had elapsed, and the fact that the rubberwood issue was not before Commerce on remand, and thus was not a 'live' issue." Dorbest II, 547 F. Supp. 2d at 1348.  Nothing has changed with regard to this issue since the court's earlier determination.  Additionally, as the court affirms the rest of Commerce's determination, to remand on this one, untimely filed, complaint would be especially burdensome, weighing against such a remand.  For these reasons, the court affirms Commerce's decision not to reopen the question of the valuation of rubberwood.

## CONCLUSION

In summary, the court finds as follows:

(i) Commerce's valuation of cardboard is **affirmed**;

(ii) Commerce's selection of surrogate companies for the computation of the financial ratios is **affirmed**;

(iii) Commerce's calculation of financial ratios with respect to interest income is **affirmed**;

(iv) Commerce's calculation of the separate rate is **affirmed**

(v) Commerce's decision not to revisit a clerical error in the valuation of rubberwood is **affirmed.**

Judgment will be entered accordingly.

  /s/ Donald C. Pogue
Donald C. Pogue, Judge

Dated:     January 7, 2009
           New York, New York